(135 So. 346)

## PENN MUT. LIFE. INS. CO. v. STATE.

### 3 Div. 974.

Supreme Court of Alabama.
June 11, 1931.

Rehearing Denied June 27, 1931.

Cabaniss & Johnston, of Birmingham, for Penn. Mut. Life Ins. Co.

Thomas E. Knight, Jr., Atty. Gen., and Frontis H. Moore, Asst. Atty. Gen., for the State.

334

ANDERSON, C. J.

Section 54 of the Revenue Act of 1927 (Gen. Acts 1927, p. 176) says: "That every corporation organized under the laws of any other state, nation, or territory, and doing business in this State, except strictly benevolent, educational or religious corporations, shall pay annually to the State an annual franchise tax of Two Dollars ($2.00) on each One Thousand Dollars ($1,000) of the actual amount of capital employed in this State. *In ascertaining the annual franchise tax which shall be paid by any foreign corporation doing business in this State under this section, there shall be deducted from the amount of the capital employed by such corporation in this State the aggregate amount of loans of money made by such corporations in this State, and which shall be secured by existing mortgage or mortgages to it on real estate in this State, and upon which mortgages there shall have been paid the recording privilege tax provided by law.*" (Italics supplied.)

▆▆▆ The question is, does the last or italicized portion render the same violative of section 232 of the Alabama Constitution of 1901? This provision of the Constitution provides for a franchise tax from foreign corporations, but restricts or limits the same to the amount of capital actually employed in the state and is unlike section 229, which provides for a franchise tax on domestic corporations which shall be in proportion to the amount of capital stock. For the origin and purpose of these separate provisions, see Louisville & N. R. Co. v. State, 201 Ala. 317, 78 So. 93. Section 232 does not restrict or direct the method to be pursued in the fixation or ascertainment of the capital employed, and therefore leaves it with the Legislature to determine, and its discretion in so doing is not forbidden by this or any other constitutional provision, unless the method adopted or prescribed will operate as an arbitrary discrimination. The allowance for the deduction for money loaned on recorded mortgages, and upon which a tax has been paid,

is not only no arbitrary discrimination, but is, in a sense, equitable in not collecting a double franchise tax on the same capital. The allowance is to all within the class dealt with in section 232 of the Constitution and applies to any foreign corporation which has loaned money secured by recorded mortgages. It is not, strictly speaking, an exemption clause, but the fixation of a reasonable method of ascertaining the amount of capital employed for the purpose of fixing the franchise tax. Moreover, the Legislature has, in other instances, relieved the taxation of mortgages as solvent credits when they have been recorded and the registration tax has been paid. State v. Alabama Fuel & Iron Co., 188 Ala. 487, 66 So. 169, L. R. A. 1915A, 185, Ann. Cas. 1916E, 752. Again, it was held within the province of the Legislature to fix a 60 per cent. valuation on property for taxing purposes, notwithstanding section 260 of the Constitution makes an imperative demand for a levy of 30 cents on each $100 of taxable property. State v. Birmingham Southern Railway Co., 182 Ala. 475, 62 So. 77, Ann. Cas. 1915D, 436.

The advisory opinion of this court to the Court of Appeals, State v. Elba Bank & Trust Co., 18 Ala. App. 253, 91 So. 917; 207 Ala. 711, 91 So. 922, is in no sense in conflict with the upholding of the provision here involved. The act, there condemned, in fixing the franchise tax on all domestic corporations under section 229 of the Constitution, excluded or exempted domestic banks from the tax, and was in the very teeth of said section 229. Here, we have no exemption of any particular class of foreign corporations, but merely an equitable method prescribed in the ascertainment of capital employed in this state. Moreover, section 229 of the Constitution, in providing a franchise tax on domestic corporations, based it on the amount of capital stock, leaving no discretionary margin for the Legislature. While section 232, in dealing with foreign corporations, in order, no doubt, to conform to the Federal Constitution and decisions, did not base the tax on the capital stock, but upon the capital actually employed in the state, thus leaving the Legislature some margin or discretion as to what constituted employed capital and how the matter should be ascertained and determined.

The case of Ellis v. W. A. Handley Mfg. Co., 214 Ala. 539, 108 So. 343, is quite different from the present one. There, the property of the corporation was employed in the state and the said corporation sought to have deducted the amount of a mortgage indebtedness it owed from the value of the property employed, and we held that no such deduction was authorized. Here, we have no such case, but one where the Legislature has several times said, in ascertaining the amount of capital employed by foreign corporations in this state, "you must not include money that

has been loaned on mortgages where the registration tax has been paid," and we are unwilling to hold that this provision is violative of section 232 or any other provision of the State Constitution, and the trial court erred in holding that it was unconstitutional.

### Upon Cross-Appeal.

■ Item (b), $24,681 represented by premium notes, is for a postponement of the collection of premiums which supply the capital of the appellant insurance company. Until received and applied by appellant, it would not be capital employed in Alabama.

■ Item (c) of $331,119, represents cash paid to the policyholder representing all or a part of his equity in the assets of appellant. It is, in a sense, a withdrawal by the policyholder of a portion of the reserve on his policy for which the company is bound, and there is no personal liability, it is not a loan or credit on which the company can be taxed as such, and this is not affected by the fact that the policyholder gives a note upon which interest is necessarily charged to adjust the account. Board of Assessors of Orleans v. New York Life Ins. Co., 216 U. S. 517, 30 S. Ct. 385, 54 L. Ed. 597.

■ Item (d) represents $1,280,604.91 Alabama bonds. These bonds were purchased by the insurance company from holders or brokers outside of the state of Alabama, and the transaction was completed and the bonds continuously held from the time of their delivery by the company as a part of its general treasury assets at the home office at Philadelphia. The amount of the purchase was not allocated by any corporate action to appellant's business in the state of Alabama. Each purchase was made on individual consideration of its merits along with the purchase of U. S. Government and other bonds. This item was also properly excluded by the trial court.

Item (e) of $1,500 represents the tangible property employed in its office in the state of Alabama, and the action of the trial court in including same is not questioned upon this appeal.

■ Mention is made in briefs of "Bank Deposit In Transit," but this item seems not to have been presented to or passed upon by the trial court and, as an appellate court, the question is not before us.

The decree of the circuit court is reversed and rendered on direct appeal, and affirmed upon cross-appeal.

Affirmed in part, and reversed and rendered in part.

GARDNER, BOULDIN, and FOSTER, JJ., concur.