197 So.2d 775

**Charles E. SCOTT**

**v.**

**SOUTHERN COACH AND BODY CO., Inc.**

**3 Div. 167.**

Supreme Court of Alabama.

March 30, 1967.

672

B. E. Jones & R. L. Jones, Evergreen, for appellee.

Hugh M. Caffey, Jr., Brewton, and Edwin C. Page, Jr., Evergreen, for appellant.

COLEMAN, Justice.

Plaintiff appeals from a judgment for defendant in an action to recover com-

missions on gross sales made by defendant during the time plaintiff was employed by defendant as sales manager.

Plaintiff claims that defendant agreed to pay to plaintiff a commission of one-half of one per cent of gross sales made by defendant during the period of plaintiff's employment. Plaintiff contended that he had made the agreement with Albert who was president and general manager of defendant. However, Albert died before the trial and plaintiff experienced difficulty in attempting to prove the existence of the alleged employment contract.

The court concluded that there was no legal evidence sustaining such contract as claimed by plaintiff and gave the affirmative charge for defendant. The jury returned verdict for defendant and the court rendered judgment accordingly.

### Assignment 1.

Plaintiff assigns for error the action of the court in overruling plaintiff's demurrer to plea 3.

The complaint contains four counts. Counts 1, 2, and 3 are common counts in code form on account and for work and labor done.

In Count 4, plaintiff claims of defendant $17,500.00 for breach of an agreement made May 18, 1958, whereby defendant promised to pay commissions to plaintiff during the period of plaintiff's employment by defendant. Plaintiff alleges that the commissions were to be paid in a sum equal to one-half of one per cent of defendant's total gross sales, and that, during the period of plaintiff's employment by defendant from May 18, 1958, to December 8, 1960, sales were made by defendant, but defendant has refused to pay said commissions to the plaintiff.

Defendant pleaded separately and severally to each count three pleas, to wit, the general issue, non assumpsit, and:

"3. Defendant alleges that the amount sued for in said Count is claimed under an alleged contract which was not in writing and is void in that, by its terms, it was not to be performed within one year from the making thereof."

Plaintiff demurred to plea 3 on the ground that it appears from the complaint that the agreement between plaintiff and defendant was wholly executed prior to commencement of the suit and that the statute of frauds does not apply to an executed contract and is no defense to an action thereon.

It is declared in § 3, subdivision (1), of Title 20, Code 1940, that every agreement; which, by its terms, is not to be performed within one year from the making thereof; is void unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged or some other person by him thereunto lawfully authorized in writing.

That provision of the statute does not apply to such a state of facts as set up by Count 4 as a basis for recovery, even if it should be stipulated by the contract that the money is not to become due until after the expiration of one year. The contract is shown by the averments not to be executory. Nothing remains to be done except to pay the money. The statute of frauds requiring certain contracts to be in writing applies to executory and not to executed contracts. Harris Transfer & Warehouse Co. v. Moor, 10 Ala.App. 469, 471, 65 So. 416.

Plea 3 sets up the statute of frauds of one year as a defense to an executed contract, but that defense is not available against the executed contract alleged in Count 4, and the plea is not good against that count.

Defendant says that plea 3 is assigned as an answer not only to Count 4 but also to Counts 1, 2, and 3 which are the common

counts, and that plaintiff's demurrer charges that plea 3 is insufficient as to all counts. We understand defendant's argument to be that since plea 3 was an answer to each count, it would not be subject to a demurrer generally, if plea 3 set up a good defense to any count, and that defendant says plea 3 does present a good defense to the common counts.

The common counts aver no special contract, and, while plea 3 refers to a contract, the plea does not set out the contract either in substance or in terms. Applied to the common counts, plea 3 cannot be understood. The statute applies only to express contracts and does not include promises implied by law like that supporting a count for money had and received and which may support other common counts. City of Greenville v. Greenville Water Works Co., 125 Ala. 625, 641, 642, 27 So. 764. The statute of frauds is not available as a defense when the suit is upon an executed contract. Lagerfelt v. McKie, 100 Ala. 430, 14 So. 281. See Wood & Pritchard v. McClure, 209 Ala. 523, 96 So. 577.

On authority of the three cases last cited, we do not think plea 3 sets up a good defense to the common counts.

Overruling demurrer to plea 3, however, was, as defendant says, error without injury, because plaintiff filed a replication alleging that the contract sued on was not executory but was fully executed prior to commencement of the suit and defendant joined issue on the replication. The case was tried on the issue whether the contract was in existence and, under the replication, plaintiff was entitled to offer evidence to prove that the agreement sued on had been made and fully executed by plaintiff.

Reversible error is not shown under Assignment 1.

### Assignment 2.

Plaintiff assigns for error the ruling of the court in refusing to admit into evidence a written contract entered into by defendant, as seller, and General Motors Corporation, as buyer, whereby the seller agreed to construct and buyer agreed to buy an item called "Junior Vans." The name of defendant was affixed to the contract by plaintiff as Vice-President.

Plaintiff's counsel stated to the court that he offered the contract as evidence because he wanted to establish that plaintiff obtained the contract for defendant, that the order for Junior Vans was a big part of the sales made by plaintiff on behalf of defendant, and to show plaintiff's actions relative to sales of defendant. The court sustained defendant's objection to the contract.

Plaintiff then offered in evidence a stipulation showing the amount of sales made by defendant during the period for which plaintiff claimed commissions. As we understand the record, this Exhibit was admitted into evidence without objection and shows the total amount of all sales made by defendant to all buyers during the period of plaintiff's employment and includes all sales made to General Motors Corporation under the Junior Van contract which the court refused to admit into evidence.

We do not see how plaintiff was injured by not admitting the General Motors contract. He was permitted to show the amount of sales made under this contract, and also under all other contracts during the period in question. The contract with General Motors Corporation, so far as we are advised, does not shed any light on the only issue contested, to wit, whether plaintiff had a valid contract with defendant whereby defendant agreed to pay the claimed commissions to plaintiff during the period of his employment. If refusing to admit the General Motors contract was error, it was without injury to plaintiff.

### Assignment 3.

Defendant says the court erred in denying plaintiff's motion to require defendant to produce for examination by plaintiff a

certain letter signed by the witness Padgett, which letter, or a photostatic copy thereof, was admitted to be in the possession of defendant's attorney who was physically present in the courtroom at the time demand was made for production of the letter.

Plaintiff's counsel examined Padgett with reference to a letter dictated by Albert, while Padgett was in Albert's office, on January 6, 1961, as we understand the testimony. Plaintiff asked that defendant produce the letter. The court denied plaintiff's motion. Counsel for defendant stated that he did not have the original but he did have a photostatic copy. Defendant stated that the letter would not be admissible except to show that Padgett signed the letter. Defendant's counsel stated that he wanted to examine the witness before plaintiff's counsel saw the letter. The court stated that it was denying plaintiff the right to see the letter until defendant's counsel had had a chance to question the witness relative to the letter. The record indicates that the court then examined the letter, and that the court repeated its ruling.

After plaintiff had further examined the witness, the following appears at the close of plaintiff's direct examination of Padgett:

"MR. CAFFEY: I think that's all. And now if the Court please I renew my request that the letter signed by this man Elmer Padgett, be presented here for my perusal so that I might introduce this letter in evidence in the trial of this case.

"THE COURT: And I deny this request at this time.

"MR. CAFFEY: We reserve an exception."

During defendant's cross-examination of Padgett, the following appears in the record:

"Q Now I want to read you just this much from the letter and then I'm going to turn it over to the gentleman that's been raring about it over there. I didn't want him to see it till I had a chance to question you about it. Now this is a letter dated—

"MR. CAFFEY: Again we renew our objection—if the letter is available to us—if it is not available to us it certainly should not be here available to Mr. Jones, we don't think any of the letter should be read in to the evidence unless the whole letter could be read—

"MR. B. JONES: Well it's up to the Judge if he lets it in—

"THE COURT: Well I'm not going to let you decide that Mr. Caffey—I've already decided that it's not going to be in.

"MR. CAFFEY: We reserve an exception."

The record does not show unequivocally that plaintiff's counsel was ever permitted to examine the letter, but plaintiff states in reply brief that, after cross-examination, plaintiff's counsel did have the letter, and that plaintiff's counsel did obtain possession of the letter on redirect examination of Padgett.

Plaintiff made no formal offer to introduce the letter into evidence. He says the court's ruling quoted above constituted a definite and final ruling that the letter would not be admitted into evidence. We understand plaintiff to argue that he was not required to make a formal offer to introduce the letter into evidence because the court had already indicated that the letter would not be admitted.

██ Even if plaintiff be correct, however, in contending that we should regard the action of the court as being a ruling sustaining objection to introduction of the letter into evidence, the letter is not set out in the transcript and we do not know its contents. Unless we presume error, we cannot say that the letter was responsive, ma-

terial, and relevant to the issue. This we cannot do. Error must be affirmatively shown, and, unless it is, we must indulge the presumption that the letter was not erroneously excluded. The letter may have been irrelevant and immaterial, and, in order to put the court in error, the record should negative the presumption which we are bound to indulge to sustain the ruling of the court. Carwile v. Carwile, 131 Ala. 603, 606, 31 So. 568.

We are of opinion that plaintiff has not shown that the rulings complained of in Assignment 3 constitute reversible error.

### Assignment 5.

Plaintiff assigns that the court erred in giving the affirmative charge requested by defendant.

In reviewing the action of the trial court in directing a verdict for defendant, we are required to review the evidence in the light most favorable to plaintiff. Wojciechowski v. L. & N. R. Co., 277 Ala. 528, 531, 173 So.2d 72.

On reviewing the propriety of the affirmative charge for defendant, we review the tendencies of the evidence in the light most favorable to plaintiff, without regard to the view which we may have as to its weight, and allow such reasonable inferences as the jury was free to draw, not those which we may think to have been more probable. Cornelison v. Logan, 253 Ala. 618, 619, 46 So.2d 215, 21 A.L.R.2d 206.

In civil cases, the question must go to the jury if the evidence, or reasonable inferences arising therefrom, furnish a mere gleam, glimmer, spark, the least particle, the smallest trace, a scintilla, in support of the theory. Brandwein v. Elliston, 268 Ala. 598, 602, 109 So.2d 687.

Defendant's contention is that the burden was on plaintiff to show that he had a contract with defendant and the terms thereof, and that "the evidence fails to show any such contract."

Plaintiff recognizes that he does have the burden to show that he had a contract with defendant and its terms. Plaintiff recognizes also that, under the dead man's statute, plaintiff is incompetent to testify as to conversations he had with Albert, when Albert, now deceased, was acting as president and general manager of defendant. Plaintiff contends, however, that the evidence is sufficient under the scintilla rule to go to the jury on the question whether plaintiff had a contract with deceased as alleged in the complaint.

Plaintiff's theory, as we understand it, is that, before the corporation was organized, plaintiff had an agreement with Albert to work for the corporation; that the agreement was that plaintiff was to receive as compensation for his services, $10,000.00 per year salary plus a commission of one-half of one per cent of defendant's total gross sales; that after the corporation was organized, Albert became president and general manager of defendant and plaintiff worked for the corporation under the agreement made with Albert; and that defendant paid the agreed salary but did not pay the commission. We do not say the evidence shows this. We state what we think is the theory on which plaintiff relies to show a right to recover.

If it be conceded, as plaintiff argues, that Albert had authority to bind the defendant corporation in a contract to employ plaintiff on the terms alleged by plaintiff, the question is, did Albert, as representative of defendant, make such a contract?

§ 433, Title 7, rules out plaintiff's testimony as to his conversations with Albert. We look for other evidence to support an inference that Albert made the contract alleged by plaintiff.

There is evidence or stipulation that plaintiff worked as sales manager for de-

fendant and was paid $10,000.00 per year salary.

Plaintiff testified that the directors, we interpolate other than Albert, did know of the contract from six months after the corporation started up, and never denied owing plaintiff the money, but plaintiff did not testify, as we understand the record, that the directors, other than Albert, ever admitted owing plaintiff the commissions or ever ratified the alleged commission contract. Plaintiff testified:

"Q Now outside of Mr. Albert—because the law says we can't any of us tie anything to what Mr. Albert said,— outside of Mr. Albert, or Albert, I don't know which you call him, who entered into that contract with you? What person—not just the corporation, but what person?

"A No one really.

"..........

"Q Now did you have any agreement with the Board of Directors?

"A No sir."

In brief, as required by Supreme Court Rule 9, plaintiff sets out the testimony of the witness Padgett as follows:

"Elmer Padgett was one of the original incorporators of the company, and was an officer or director of the company from its inception (tr. p. 48); that in a discussion he had with Mr. Albert prior to the incorporation of the company, Mr. Albert expressed a desire to bring Charles Scott into the corporation (tr. p. 49–60); that individually and as a Director of the corporation he did not have any discussion with Clayton Albert after the incorporation about remuneration to be received by Charles Scott (tr. p. 50); that he was present on one occasion when Charles Scott made demand upon Clayton Albert for the commission and heard Clayton Albert tell Charles Scott that 'he was not able at that time' (tr. p. 51);

that Clayton Albert was President and General Manager of the Company, and had authority to hire and fire employees of the company, Tr. p. 51, 52); that he signed a letter to Mr. Elrod stating that he did not know anything about the agreement with Mr. Scott regarding commissions; that said letter was dictated by Mr. Albert and signed by the witness at the request of Mr. Albert (tr. p. 54); that the letter did not speak the truth (tr. p. 57); that several months after the incorporation he overheard Mr. Scott make demand upon Mr. Albert for the commission and Mr. Albert answer that they did not have the money just then to pay him (tr. p. 63–67).

"As to the signing of the letter to Mr. Elrod, the witness testified as follows:

"Q. And what threat did he make to you to induce you to—or coerce you into signing that letter?

"A. I told him I didn't want to sign it and he said . . .

"The Court: He asked what threat he made to you Mr. Witness, tell him that.

"A. He said Mr. Elrod wanted it signed and you know what would be the result if you don't sign it.

"Q. And in your best recollection were those the very words that were used there on that occasion?

"A. As far as my recollection yes sir.

"Q. And you signed your name to something that you knew to be false at that time.

"A. Yes, sir. (Tr. p. 66)"

The closest plaintiff came to showing the terms of a contract as alleged in Count 4 is the testimony of Padgett that on an occasion prior to formation of defendant corporation, Albert made a statement to Padgett as follows:

"A  He said he was figuring on bringing Charlie Scott into the company and was going to pay him the same rate, the same commission that he was paid when he was with Southern Coach Manufacturing Company which was one-half of one percent."

On the view most favorable to plaintiff, this was merely a statement of Albert's intention to do something in the future. It is not an acknowledgment or admission that a contract had been made. It is not a statement that Albert had agreed to pay plaintiff a commission as plaintiff alleges in Count 4. The statement was made prior to the time the defendant corporation came into existence.

We think the evidence supports a finding that plaintiff did have a contract to work for defendant and that plaintiff did work for defendant. Other than an agreement to pay plaintiff $10,000.00 per year, certain expenses, and a share in the profit sharing plan for all employees, however, we do not find any evidence of what the terms of the contract were. It is apparent that the terms of plaintiff's contract of employment were set out in some agreement made by plaintiff with Albert who was acting for the defendant, but plaintiff cannot testify what was his transaction with Albert, and we do not think there is any other evidence showing the terms of an agreement as alleged in Count 4 of the complaint.

We have undertaken to state the evidence on which plaintiff must rely to prove his case. We do not think this evidence furnishes even a scintilla to show that the defendant corporation agreed to pay plaintiff a commission of one-half of one per cent of total gross sales. The court did not err in giving the affirmative charge requested by defendant

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.