265 So.2d 580

**T. J. COX**

v.

**HOWARD HALL COMPANY, Inc.**

**6 Div. 877.**

Supreme Court of Alabama.

Aug. 3, 1972.

Rives, Peterson, Pettus, Conway & Burge, Birmingham, for appellant.

London, Yancey, Clark & Allen and Max Hudson, Birmingham, for appellee.

PER CURIAM.

This is a suit by T. J. Cox against Howard Hall Company, Inc., Floyd Johnson and Robert H. Hayes to recover damages for personal injuries, property damage and loss of earnings which Cox alleged he sustained when a Ford truck which he was driving was hit from the rear by a large Dodge truck-tractor driven by Robert H. Hayes.

The defendants will usually be referred to hereinafter as Hall, Johnson and Hayes.

Liability was sought to be fixed on Hall and Johnson under the doctrine of *respondeat superior*.

At the conclusion of the evidence offered by the plaintiff and the defendants, the trial court gave at the written request of the defendant Hall the general affirmative charge without hypothesis.

The jury then returned a verdict in favor of the plaintiff against Johnson and Hayes in the amount of $30,000. The jury found in favor of Hall in accordance with the trial court's instruction. Judgment was in accord with the verdict.

From the judgment in favor of Hall the plaintiff, Cox, brings this appeal and argues only his assignment of error to the effect that the trial court erred to a reversal in giving the affirmative charge without hypothesis in favor of the defendant Hall, contending that there was sufficient evidence to have required submission to the jury of the question as to whether negligence of Hayes was imputable to Hall under the doctrine of *respondeat superior*.

■ It is settled that where by the undisputed evidence plaintiff has not shown that he is entitled to recover on his complaint, a court may direct a verdict for the defendant and it is immaterial whether the jury believe the evidence or not. In either event, plaintiff has not proven his complaint. Cannon v. Louisville & N. R. Co., 252 Ala. 571, 42 So.2d 340; O'Bar v. Southern Life & Health Ins. Co., 232 Ala. 459, 168 So. 580, and cases cited; Stevens v. Deaton Truck Line, 256 Ala. 229, 54 So.2d 464; Cooper v. Providence Hospital, 272 Ala. 283, 130 So.2d 8; Jessup v. Shaddix, 275 Ala. 281, 154 So.2d 39; Atlantic Coast Line Railroad Co. v. Vise, 262 Ala. 329, 78 So.2d 661.

On and prior to July 15, 1969, the defendant Johnson owned the Dodge truck-tractor which, when operated with a trailer, was capable of hauling freight. Hall was engaged in the business of hauling freight as an interstate motor common carrier under Certificates of Public Convenience and Necessity from the Interstate Commerce Commission.

On July 15, 1969, Johnson and Hall executed an instrument wherein Johnson leased to Hall the Dodge truck-tractor which was being driven by Hayes at the time of the accident out of which this litigation arises. In the lease, Johnson is referred to as the Contractor and Hall as the Company.

We will not set out the lease *in extenso*, but will summarize some of its provisions and quote other provisions.

Paragraph 2 of the lease provided that Johnson "hereby leases, rents and delivers unto the Company, for use in the conduct of its operation, the following described motor vehicle equipment: (truck description)"; that Johnson would furnish all labor to operate the truck, and that said truck and labor should be available to Hall at all times during the term of the lease.

Paragraph 3 provided that Johnson would be paid for furnishing the truck, labor and other services on a mileage (weight) percentage formula. Paragraph 4 provided that no freight would be hauled by the truck without the knowledge and consent of Hall. Paragraph 5 provided that Johnson warranted the vehicle to be in good, safe operating and mechanical condition, in compliance with applicable regulations and that Johnson would so maintain the vehicle during the term of the lease. Paragraph 6 of the contract provided that Johnson would pay the entire cost of maintaining and operating the vehicle, including wages and other payments due by his employment of drivers or other labor. Paragraph 7 provided that if Hall was required to pay any cost of operating or maintaining the vehicle, Johnson would reimburse Hall, or Hall could elect to withhold sufficient money due Johnson under the contract to cover such disbursements. Paragraph 8 contained other provisions concerning the right of Hall to withhold money to cover expenditures made by Hall but which might be charged to Johnson's account.

Paragraph 9 provided in part as follows:

"Contractor [Johnson] agrees to furnish the Company, at his expense, a copy

of his driver's correct medical certificate, a copy of all Driver's Daily Logs, a copy of the driver's Mileage Route Summary, and such other reports or forms as may be required by the Company, the ICC or other regulatory bodies. . . ."

Paragraph 10 required Johnson to reimburse Hall for certain other costs or expenses or collections made by "any of his agents, servants or employees" which were not properly remitted.

Paragraph 11 provided:

"Contractor [Johnson] agrees that he shall provide and furnish all drivers, helpers or other persons necessary to perform properly the service called for in this Agreement and that such persons shall be competent and qualified in all respects and shall meet the requirements and qualifications of the ICC and of State and local regulatory bodies. It is understood that such persons shall be employees of the Contractor [Johnson] and not of the Company [Hall]. Contractor [Johnson] shall direct and control his employees, including selecting, hiring, supervision, training, firing, setting wages, hours and working conditions, paying, and adjusting their grievances. Contractor [Johnson] shall determine the method, means and manner of performing the provisions of this Agreement on his part and shall be responsible to the Company [Hall] for the proper performance thereof in accordance and conformance with all applicable laws, ordinances, rules and regulations."

Paragraph 12 required that Johnson report to Hall by telephone immediately after the occurrence any accidents and as soon as possible thereafter submit a written report covering the occurrence. Paragraph 13 required Johnson to be at the service and disposal of the Company before and after the termination of the lease period to assist Hall in the defense of claims, suits, etc., for loss of or damage to any shipment or for any other cause arising in connection with the agreement. Paragraph 14 required Johnson to purchase fuel in the minimum amounts required by states through which the vehicle passed. Paragraph 15 required Johnson to be solely responsible for damage to or loss of the leased equipment regardless of cause, and contained a release in favor of Hall for any damage which might occur to the equipment.

Paragraph 16 provided in part as follows:

"The Company agrees to provide Public Liability and Property Damage insurance on the leased vehicle when being used in accordance with the provisions of this lease. This insurance shall not cover any operation of the leased vehicle when *not* being used on Company business in providing the transportation service contemplated by this Agreement, nor will such insurance cover damage to persons or property resulting from the collision of two vehicles, both of which are under lease to the Company. . . ."

Paragraph 17 reads:

"Neither party hereto is the agent of the other, and neither party shall have the right to bind the other by contract or otherwise except as specifically provided herein. The parties intend to create by this Lease Agreement the relationship of company and independent contractor and not that of Employer and Employee. Neither the Contractor [Johnson] nor his agents, servants or employees are to be considered employees are to be considered employees (sic) of the Company [Hall] at any time for any purpose. The Company [Hall] shall have only such control over and use of the leased vehicle and its driver and shall assume only such responsibility in connection therewith as may be required by rules and regulations of the ICC in order to accomplish the results and purposes for which this Agreement is executed. The parties agree the (sic) the Company [Hall] has no authority or right to control the details of the operation and maintenance of the leased equipment, and no agent, servant or employee of the

Company [Hall] shall exert or attempt to exert any control or authority except to the extent required by law in order to accomplish the result and purposes for which this Agreement is executed."

Paragraph 18 provided for termination of the agreement on account of any breach by Johnson. The concluding Paragraphs 19 and 20 set out the contract term, cancellation provisions, etc.

Leases more or less similar to the one entered into between Hall and Johnson have been before this court on previous occasions. Stevens v. Deaton Truck Line, *supra*; Deaton Truck Line, Inc., v. Acker, 261 Ala. 468, 74 So.2d 717; Hays v. Deaton Truck Line, 264 Ala. 442, 87 So.2d 825; Anderson v. Howard Hall Co., 272 Ala. 466, 131 So.2d 417; Thomas v. Hubbert, 280 Ala. 302, 193 So.2d 746.

In the *Stevens* case, *supra,* the truck-tractor involved in the accident was being driven by its owner, one Roberts, who had leased it to Deaton under a written lease agreement similar to but not identical with the lease between Johnson and Hall in this case. We interpreted the record as indicating that the trial court concluded that under the terms of the lease and the evidence as it related to the manner in which the parties operated under it, the relationship of master and servant existed between Deaton and Roberts. Nevertheless the trial court directed a verdict in favor of Deaton on the ground that the evidence was not sufficient to show that at the time of the accident Roberts was acting in the line or scope of his employment.

We affirmed, saying in part:

"We are inclined to agree with the trial court that under the evidence in this case Roberts, in carrying out his duties under the terms of the contract, was a servant or employee of Deaton rather than an independent contractor.

"But such status or relationship in and of itself was not sufficient to make Deaton liable for the negligence of Roberts under all circumstances. To recover against Deaton upon the theory of *respondeat superior* it was incumbent upon plaintiff to show that the act done was within the scope of Roberts' employment and was committed in the accomplishment of objects within the line of his duties, or in or about the business or duties assigned to him by his employer. Smith v. Brown-Smith Ins. Co., 250 Ala. 613, 35 So.2d 490." (256 Ala. 233, 54 So.2d 464, 468)

The pronouncements quoted above from the *Stevens* case, *supra,* were reaffirmed in the *Acker, Hays, Anderson* and *Thomas* cases, *supra.* In each of those cases, except *Acker,* recovery against the carrier was denied on the ground that the driver of the leased motor vehicle was not at the time of the accident performing an act within the scope of his employment by the carrier, nor was such act done in the accomplishment of objects within the line of his duties or in or about the business or duties assigned to him by the carrier. In the *Acker* case, *supra,* Acker's dependent widow attempted to obtain workmen's compensation benefits from the carrier, Deaton, as a result of her husband's death, which occurred at his home when he and a friend were engaged in attempting to repair a leak in the gasoline tank of the leased truck-tractor. Death resulted from an explosion. The lease between Acker and Deaton required that Acker keep his truck-tractor in good mechanical condition and repair at his own expense for the duration of the lease. In reversing the lower court's judgment awarding benefits to the widow, this court said:

"Our interpretation of the written agreement here involved is that while the motor vehicle was out of service and being repaired, it was under the sole jurisdiction and control of Acker, whose duty it was to have it repaired at his own expense. He was privileged to select the place where, and the person by whom the repairs should be made." (261 Ala. 472, 74 So.2d 721)

No freight. was being hauled for Hall at the time of the accident involved in this case. In fact, no trailer was attached to the truck-tractor, as we have previously indicated. So in the respect that no freight was being hauled, the facts in this case are identical to the facts in each of the cases to which we have referred above wherein somewhat similar leases were involved.

The appellant, Cox, the plaintiff below, in support of his contention that the trial court erred in directing the verdict in favor of Hall, says in his brief as follows:

"The ensuing discussion of the facts and the law will support our contention that Hayes was an employee of Hall, and that he was acting within the line and scope of his employment by Hall, both on the basis that he was in fact under the control of Hall at the time of the accident, and that the purpose of the trip was for the benefit of Hall or at least the mutual benefit of Hall and Johnson. All that was necessary was that the evidence be sufficient to permit the jury to infer that the foregoing statement was true."

We come now to consider the evidence as it bears on the question as to whether Hayes, at the time of the accident, was an employee of Hall, acting within the line and scope of his authority, and since the trial court, in effect, directed a verdict in favor of Hall, apparently on the ground that the evidence was insufficient to show that Hayes, at the time of the accident, was an employee of Hall, acting within the line and scope of his authority, we must view the evidence in the light most favorable to the plaintiff, Cox, the appellant here. Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224; Birmingham Electric Co. v. McQueen, 253 Ala. 395, 44 So.2d 598; Stevens v. Deaton Truck Line, supra.

In this jurisdiction, unlike in some others, the rule is that if there is a scintilla of evidence to support plaintiff's case, that is, a mere gleam, glimmer, spark, the smallest trace, of evidence to support the plaintiff's theory the general affirmative charge

without hypothesis should not be given in favor of the defendant. Barber v. Stephenson, 260 Ala. 151, 69 So.2d 251; Scott v. Southern Coach & Body Co., 280 Ala. 670, 197 So.2d 775.

On August 22, 1969, the day of the accident, Johnson owned three trucks or truck-tractors, all of which were under lease to Hall. Johnson drove one of the vehicles and Hayes drove the Dodge truck-tractor involved in this litigation. The name of the driver of the other vehicle does not appear and is immaterial.

When Hayes decided that he wanted to drive a truck he applied to Jimmy Gilliland, Hall's "safety man," for a job. The evidence does not show that Gilliland referred Hayes to Johnson nor does it show how Hayes got in touch with Johnson, but that he did. Johnson hired Hayes subject to the approval of Hall's "safety man," who checked his record. This was a policy in regard to any driver hired by Johnson. Hayes worked for Johnson but it took two to do the hiring, Johnson and Hall.

Hayes was paid by Johnson each Friday out of the check which Johnson received on that day from Hall.

Hall used the truck-tractor throughout the week and decided "what was to be done and where it was to go." Hayes, as the driver of the vehicle, was subject to call by Hall "to do what they said."

Hayes was required to file with Hall, as all others who drove trucks leased to Hall were required to do, what Hayes termed a "driving log," showing his whereabouts at all times when driving and at all other times during the day as long as he was assigned to the operation of the vehicle. This was in accordance with Paragraph 9 of the lease. On the daily logs Hayes reported any operating difficulty which he might have had with the vehicle and the work, if any, which had been done on it. He had standard instructions to have the vehicle fixed if it got out of order. He was required by Hall to "read the book," apparently federal regulations such as the Motor

Carrier Safety Regulations promulgated by the United States Department of Transportation, two sections of which were offered in evidence by the plaintiff, Cox, but were not admitted. Hall required that the vehicles leased to it be kept and maintained in accordance with the federal regulations. Generally speaking, the truck-tractor involved in this litigation was kept at one of Hall's terminals when it was not actually being used in the hauling of freight.

Hall required Hayes to carry a doctor's certificate, which was in accordance with a rule of the Interstate Commerce Commission. This, too, was in accordance with the provisions of Paragraph 9 of the lease. Hayes obtained the certificate from a Dr. Green, to whom he was sent by Hall's "safety man," Gilliland. The certificate, which had Hall's name on it, was in Hayes' possession at time of trial, although he was not then driving a vehicle which hauled freight for Hall.

Hall required the drivers to attend safety meetings wherein they were instructed as to proper procedures for operating the vehicles which hauled its freight.

Hall made periodic inspections of the truck-tractors and required Hayes, in accordance with a requirement made of all drivers, to report to Hall quarterly the work which had been done on the vehicle and Hall kept records of the work which had been done. If, after an inspection Hall found something wrong with the vehicle, it would tell the driver to see that it was fixed. But Hall did not pay for any repairs.

Hayes drove the truck-tractor with a trailer attached from Florida on the night of August 21, 1969. As he approached his home in Thorsby, he called Hall's dispatcher, who told him he need not drive into Birmingham that night. He drove the truck-tractor with trailer to Birmingham the next morning, August 22, 1969. He arrived in Birmingham at about 7:00 a. m., going to Hall's terminal on the north side of Birmingham, where he apparently disconnected the trailer and where he remained until he got a call from Howard Hall, Jr., "around dinner time," who directed him to drive the truck-tractor to Hall's southside terminal to connect with a trailer which had been brought in from Mississippi. He "bobtailed," that is, he drove the Dodge truck-tractor without a trailer, from the northside terminal to the southside terminal, where he connected it with the Mississippi trailer, which he then pulled to the place of business of Pittsburg and Moore, where he had the trailer loaded with steel. Hayes then hauled the Mississippi trailer as so loaded to the southside terminal, where that trailer was disconnected from the Dodge truck-tractor.

While he was doing the work last referred to, the alternator on the truck-tractor developed trouble. When Hayes arrived back at the southside terminal he told Howard Hall, Jr., of the trouble with the alternator and told him he was going by the battery shop. Howard Hall, Jr., did not tell him where to take the truck-tractor to have the alternator fixed nor, in fact, did he tell him to have it fixed. An alternator "keeps the battery charged up."

Hall had no more work for the truck-tractor at the southside terminal at that time, so Hayes drove it without a trailer to the northside terminal where he picked up Johnson's check and was on his way to a battery shop operated by Johnson's wife to have the alternator repaired when the accident occurred. At the time of the accident the words "Howard Hall Company, Inc." appeared on the truck-tractor.

We see no occasion to delineate the evidence as it relates to the manner in which the accident occurred, because we are not concerned on this appeal with the cause of the accident.

Immediately after the accident Hayes reported the accident to Hall's dispatcher, one Dobbins. Dobbins advised Hayes to call the police and told Hayes that he would send the "safety man," Gilliland, to the scene.

Later, Hayes drove the truck-tractor to Mrs. Johnson's battery shop, where he left it for Mr. Johnson's attention after he returned from a trip to Tampa, Florida, to which place he had driven one of his other vehicles under lease to Hall.

In Hays v. Deaton Truck Line, *supra,* the suit arose out of an accident involving the automobile of Hays and a truck owned by the defendant Compton, driven by one McWhorter, which truck was then under lease to defendant, Deaton Truck Line, Inc. In that case we said:

> "In construing a lease similar to the one before us, this court in Stevens v. Deaton Truck Line, 256 Ala. 229, 54 So.2d 464, leaned to the view that when carrying out his duties under the terms of said lease, the truck owner was a servant or employee of Deaton rather than an independent contractor. In our view this relationship is not changed by the owner's employment of a driver. The master-servant relationship continues with Deaton and the owner as the servant-driver's master. *The driver would be the servant for both.* Cf. Deaton Truck Line v. Acker, 261 Ala. 468, 74 So.2d 717." (Emphasis supplied) (264 Ala. 445, 87 So.2d 826)

■ Actually, the driver stands in the shoes of the truck owner. If an accident occurs while the driver is driving the leased vehicle, for which the lessee-motor carrier would have been liable if the lessor-owner had been driving, then the motor carrier would be liable. The employment of a driver by the lessor-owner does not broaden or diminish his relationship to the lessee-motor carrier.

Hall's concern with the ability of the drivers of the leased vehicles to operate the vehicles carefully and in accordance with rules and regulations of the Interstate Commerce Commission and with applicable state and local regulations was to insure that it could maintain its status as a common carrier and to minimize its losses while the leased vehicles were actually engaged in the hauling of freight or in the accomplishment of objects within the line and scope of the duties of the lessee under the terms of the lease. Such policies were also in keeping with Hall's right to determine if, indeed, Johnson had complied with his obligations under Paragraph 11 of the lease to furnish as drivers persons who were "competent and qualified in all respects" and who met "the requirements and qualifications of the ICC and of State and local regulatory bodies."

If Hayes at the time of the accident was acting within the line and scope of the duties to be performed by Johnson or his driver for Hall under the terms of the lease, then Hayes was at that time Hall's employee.

■ We entertain the view that under our cases at the time of the accident Hayes was acting for Johnson and not for Hall.

It was Johnson's duty and responsibility under the terms of the lease agreement to maintain the truck-tractor in good, safe operating and mechanical condition during the term of the lease (Paragraph 5) and at his own expense (Paragraph 6) and the lease contemplated that Johnson would furnish a driver or drivers at his expense (Paragraph 11).

We have heretofore summarized the facts and spelled out the holding of this court in Deaton Truck Line, Inc., v. Acker, *supra,* which clearly holds that the lessee-motor carrier is not required to pay workmen's compensation benefits to a dependent widow whose husband was killed while making repairs at his home on a tractor which he had leased to Deaton when the lease provided that it was the lessor's duty to keep his tractor in good mechanical condition and repair at his own expense and for the duration of the lease. Our holding in that case is set out above and need not be repeated at this point in the opinion.

The most recent case which bears on the question at hand is Thomas et al. v. Hubbert, *supra.* It was cited in the brief of

appellee, Hall, but was not cited in the original brief filed on behalf of appellant, Cox, although attempted to be distinguished in his reply brief.

In the *Thomas* case, *supra,* suits were filed by Thomas and others against Hubbert and Malone Freight Lines, Inc., to recover damages for personal injuries sustained by the plaintiffs arising out of an automobile accident between the automobile driven by Thomas and a truck being operated by Hubbert, the owner of the truck, which was leased to Malone under a lease generally similar to the lease at hand.

The facts are not unlike those in the present case except that at the time of the accident the leased truck was being driven by its owner. Thomas, the plaintiff, was hit in the rear by a "bobtail" tractor (no trailer attached) owned and being operated by the defendant, Hubbert, while the plaintiff, Thomas, was stopped at a traffic light at an intersection in Birmingham. On the date of the accident the defendant, Hubbert, was at Malone's yard or terminal in Birmingham having his vehicle given a safety inspection by Malone. While on Malone's premises Hubbert received a call from his brother requesting that he meet him at a certain place to help the brother start his truck, which also was under lease to Malone. Hubbert complied with the request. While returning to Malone's yard or terminal for a continuation of the inspection of his own truck-tractor, Hubbert was involved in the accident. Obviously, since he was "bobtailing," Hubbert was not hauling any freight.

Liability was sought to be established as to Malone Freight Lines under the doctrine of *respondeat superior.*

At the conclusion of the evidence, the court gave the general affirmative charge without hypothesis for Malone, a directed verdict, in effect. Thereafter the jury returned a verdict in favor of Malone and against the lessor-truck owner. Judgment was in accord with the verdict.

From the judgment in favor of Malone, the plaintiffs appealed to this court.

The issue before this court was whether the trial court erred in directing a verdict in favor of Malone. This, of course, presented the question as to whether the owner-driver, Hubbert, at the time of the accident was acting within the line and scope of employment by Malone.

This court affirmed, saying, in an opinion prepared for the court by Mr. Justice Simpson, in pertinent part as follows:

"In order to hold the freight line liable for the acts of its agent, it is incumbent upon the plaintiff in a case of this kind to prove that at the time of the accident the driver-owner-lessor was acting within the line and scope of his employment or stated differently, was on a mission not personal to himself but in accomplishment of objects within the line of his duties. And, we must view the evidence in this regard most favorably to the plaintiff to avert the giving of the affirmative charge for the defendant. Sullivan v. Alabama Power Company, 246 Ala. 262, 20 So.2d 224.

"There is no conflict in the evidence with regard to where defendant Hubbert had been and where he was going at the time of the accident. He had been to assist his brother, another owner-lessor-driver for Malone, to start his truck. He was 'en route back to the Malone yard where his tractor was being inspected. We believe that we are compelled to agree with the trial judge that under these facts, this case is controlled by the following: Stevens v. Deaton Truck Line, 256 Ala. 229, 54 So.2d 464; Hays v. Deaton Truck Line, 264 Ala. 442, 87 So. 2d 825; Anderson v. Howard Hall Company, Inc., 272 Ala. 466, 131 So.2d 417; Smith v. Brown-Service Insurance Co., 250 Ala. 613, 35 So.2d 490. The Stevens case, supra, is particularly in point. There the evidence was that Roberts, the driver, at the time of the accident, was returning to his home at Asheville from

**44**

Deaton's terminal, where he had been to see if there was any work for him. *Here the driver was returning to the terminal to see to the inspection of his tractor, the maintenance of which was his responsibility under the lease.* There we said:

" ' "The general rule is that an employee using an automobile, whether belonging to his master or to himself, in going to and from his place of work, is not at such times regarded as engaged in work for his master but is acting solely for his own purposes." '

"In that case we noted:

" 'We are clear to the conclusion that the evidence in this case, when viewed in the light most favorable to the plaintiff, fails to show that at the time of the accident Roberts was engaged in the accomplishment of objects within the line of his duties or in or about the business or duties assigned to him by his employer, but does show that at such time Roberts was driving the truck-tractor on a mission of his own for his sole benefit.'

"We must conclude that such is the case here. Hubbert had been to help his brother get his truck started, which under the arrangement the brother was required to keep in running condition. Neither was then hauling freight for Malone, nor on any business for Malone. Malone could not have had any interest in whether brother William's truck would start on this occasion or not. The company would be concerned only that he was available to haul a load when scheduled, which under the evidence was not until some time later. We can see no benefit which Malone gained from Hubbert's trip to help his brother." (Emphasis supplied) (280 Ala. 304, 193 So.2d 747)

Appellee, Cox, in his reply brief seeks to distinguish the case of Thomas v. Hubbert, *supra*, from the instant case, contending, if we understand his argument correctly, that Hubbert was not only the driver but the owner of the vehicle and a party to the lease agreement, while in the instant case Hayes was not the owner of the truck-tractor and was not a party to the lease. The reply brief contains the following statement: "Necessarily a different test must be applicable as between a case involving a driver-owner-lessor such as Hubbert, and a case involving an employee-driver such as Hayes, control over whom had been accepted and exercised by Hall."

No authority is cited in support of that statement which, in our opinion, is in conflict with our holding in Hays v. Deaton Truck Line, Inc., *supra*, unless it can be said that the evidence shows that Hall exercised such control over Hayes as to have made him the servant of Hall at all times and irrespective of the nature of the work which he performed. The evidence does not so indicate.

The so-called "control" which Hall exercised over Hayes was no more than Hall was authorized to exercise and did exercise over all drivers of leased equipment, including Johnson who, as previously shown, drove a truck-tractor which he owned but which was under lease to Hall.

The distinction which appellant, Cox, attempts to draw between a driver-owner-lessor, such as Johnson or Hubbert, and an employee-driver such as Hayes, is not sufficient to take this case from under the influence of Thomas v. Hubbert, *supra*.

Assuming without admitting that there was a presumption of agency established by the plaintiff by showing that at the time of the accident the words "Howard Hall Company, Inc.," were painted on the truck-tractor, we are of the opinion that the evidence adduced by the defendants is clear and undisputed to the effect that at the time of the accident Hayes was not operating the truck-tractor in the line and scope of employment by Hall.

Appellant, Cox, cited and relies upon the case of Vance Trucking Co. et al. v. Canal

Insurance Co. et al., D.C., 249 F.Supp. 33. It is suffficient to say that the opinion in that case contains language which runs counter to that in our cases previously cited.

Appellee, Hall, has not sought to have the trial court's judgment upheld on the ground that under the provisions of Paragraph 17 of the lease, the relationship of company and independent contractor was established, rather than that of principal and agent, irrespective of the use to which the leased vehicle was being put at the time of an accident.

In King v. Early, 274 Ala. 116, 120, 145 So.2d 831, Mr. Justice Harwood, writing for the court, said:

> "Agency is determined by the facts, and not by how the parties may characterize the relationship. Purnell v. City of Florence, 27 Ala.App. 516, 175 So. 417. If the facts establish the relationship of principal and agent, the intention of the parties is immaterial, and the character of the relation is not affected by an agreement between the parties that an agency does not exist, or that some other relation does exist. Minto v. Moore, 1 Ala.App. 556, 55 So. 542."

See Rust Engineering Co. v. State, 286 Ala. 589, 243 So.2d 695.

■ One of appellant's Propositions of Law reads: "Where employee of one is furnished to another, he may be found to be employee of party to whom furnished." That "Proposition of Law" was not within the issues upon which the case was tried below. One of the cases cited in support of that proposition of law is Vance Trucking Co. v. Canal Insurance Co., *supra*. As indicated above, that case is discussed in appellant's argument but not in connection with the proposition of law for which it is cited. There is no discussion of that proposition. But, in any event, this court will not reverse a judgment of a trial court on nonjurisdictional questions not within the issues on which the case was tried and not considered or decided by the trial court.

Penn Mut. Life Ins. Co. v. State, 223 Ala. 332, 135 So. 346; City of Birmingham v. Wheeler, 225 Ala. 678, 145 So. 140; Trans-Continental Mutual Insurance Co. v. Harrison, 262 Ala. 373, 78 So.2d 917.

The judgment is affirmed.

The foregoing opinion was prepared by Thomas S. Lawson, Supernumerary Associate Justice, and was adopted by the Court as its opinion.

Affirmed.

MERRILL, HARWOOD, MADDOX and McCALL, JJ., concur.

HEFLIN, C. J., concurs specially.

HEFLIN, Chief Justice (concurring specially):

I am of the opinion that the issue in this case depends upon the applicability of the following Interstate Commerce Commission rule which appears in 49 C.F.R. (Rev.1964), § 207.4:

> "§ 207.4 AUGMENTING EQUIPMENT.
>
> "Other than equipment exchanged between motor common carriers in interchange service as defined in § 207.5, authorized carriers may perform authorized transportation in or with equipment which they do not own only under the following conditions:
>
> (a) Contract requirements. The contract, lease, or other arrangement for the use of such equipment:
>
> *   *   *   *   *   *
>
> (4) Exclusive possession and responsibility. Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement, except:
>
> *   *   *   *   *   * "

**46**

In the case of Thornberry v. Oyler Bros., Inc., 164 Ohio St. 395, 131 N.E.2d 383, treatment was given to a predecessor to the above regulation, known as Administrative Rule No. 4 of the Bureau of Motor Vehicles of the Interstate Commerce Commission, as authorized by Part II of the Interstate Commerce Commission Act, § 301 et seq., Title 49 of U.S.C.A., which rule was to the effect that the arrangement under which a carrier utilizes in its operation a vehicle which it does not own, regardless of whether the services of an owner-driver or his representative are involved, must be of such a character that the carrier will have the right to direct and control the operation of the vehicle at all times and be fully responsible therefor in all respects, under all applicable provisions of law governing the duties and obligations of the carrier to the shipper and to the public generally. But *Thornberry* held such rule did not prevent a state court from holding that the carrier was not liable for the driver's conduct when a collision occurred while the driver was on a mission outside the line and scope of his employment. For a similar decision see Kaplan Trucking Company v. Lavine, 253 F.2d 254 (6 Cir. 1958).

A similar result was reached in Gackstetter v. Dart Transit Company, 269 Minn. 146, 130 N.W.2d 326, in connection with the heretofore quoted portion of § 207.4 of 49 C.F.R.

Under the facts of the instant case the question arises as to whether or not Hall and Johnson could have legally entered into a contractual relationship by which Johnson would be an independent contractor for the purpose of maintaining the motor vehicles in good, safe, operating and mechanical condition in light of the applicable I.C.C. rule. I see no good reason why such contractual arrangement would not be valid. The driver, Hayes, under said I.C.C. rule would be Hall's employee when he was in the line and scope of his duties as such, but there is nothing to prevent him from becoming Johnson's employee when he is no longer in the line and scope of Hall's business. Thus I concur in the result of the opinion in this case but for a different reason.