The plaintiffs, Marjorie L. Hicks and her granddaughter Julie Nicole Odom, appealed to the Court of Civil Appeals from a judgment for defendant Cardinal Transport Company, Inc., based on a directed verdict, and from an order excluding evidence that plaintiffs maintain resulted in the award of inadequate damages. Hicks and her granddaughter had brought an action alleging negligence and wantonness on the part of Cardinal and defendants Dale Westbrook and Bob Westbrook, stemming from an automobile-truck accident. The Court of Civil Appeals affirmed the judgment as to Cardinal, but reversed as to the Westbrooks, holding that the excluded evidence offered by Hicks should have been admitted, 537 So.2d 482. We granted certiorari based on petitions filed by the plaintiffs and by the Westbrook defendants. We affirm in part, reverse in part, and remand.
The relevant facts are as follows:
On January 29, 1982, plaintiff Hicks sustained cuts and bruises and plaintiff Julie Nicole Odom, age 2, was rendered unconscious when an 18-wheel tractor-trailer lunged into the rear of the automobile in which they were traveling. The two had been traveling on Highway 77 in Southside, Etowah County, Alabama. Who was at fault in this accident is uncontroverted. The driver, defendant Dale Westbrook, was traveling at an excessive speed.[1] He did not apply his brakes soon enough to avoid the collision. The tractor truck was owned by Bob Westbrook.
Pursuant to an established course of dealing, Cardinal had approved Dale Westbrook to drive a tractor-trailer on Cardinal's behalf. The bill of lading for the delivery Dale Westbrook had made at the time of the accident was in the name of Cardinal Transport. Neither Bob Westbrook nor Dale Westbrook had acquired rights to transport goods in interstate commerce. Both Westbrooks could, however, haul loads for Cardinal. Whenever this happened, Cardinal would pay the Westbrooks a percentage of the fee for transporting the load. As a result of their working arrangement, the tag on Bob Westbrook's tractor was registered in Cardinal Transport's name.
On the day prior to the mishap, Cardinal's agent, Bill Austin, phoned Bob Westbrook and requested that either he or his son, Dale Westbrook, attach Cardinal's trailer to Bob's tractor and pull a load of wire to Atlanta, Georgia. Pursuant to Austin's request, and with Bob Westbrook's permission, Dale Westbrook went to the Cardinal depot, located in Decatur, Alabama, and there he hooked the Cardinal trailer to Bob's tractor. He then drove to Atlanta, Georgia, making the delivery. It was on Dale Westbrook's return trip from Atlanta that the accident occurred.
The trial of this case commenced on January 13, 1986. Following the presentation of the plaintiffs' evidence, Cardinal moved for, and was granted, a directed verdict. The jury returned a verdict against the Westbrooks in the amount of $5,000.00 for Hicks and $1,000.00 for Odom. Judgment was entered on those verdicts. Thereafter, the plaintiffs appealed to the Court of Civil Appeals. We have granted certiorari to review that court's judgment.
This case presents the following issues for our review:
1. Whether the trial court erred in granting defendant Cardinal Transport Company's directed verdict? (The Court of Civil Appeals affirmed as to this issue, and the plaintiffs raise it for our review; we reverse.) *Page 488 
2. Whether the trial court committed reversible error in sustaining the defendants' objection to the receipt into evidence of the plaintiffs' Exhibit 25, their second request for admission of facts, with attached hospital bills. (The Court of Civil Appeals reversed as to this issue, and defendants Westbrook raise it for our review; we affirm.)
Preliminary to our review of Cardinal's directed verdict, we observe that our function is to review the evidence in a light most favorable to the non-moving party, and if, by any interpretation, the evidence can support a conclusion favoring the non-moving party, we must reverse. Rose v. Miller Co., 432 So.2d 1237 (Ala. 1983); see also Rule 50(a), A.R.Civ.P.
 I.
The plaintiffs first argue that because Cardinal's name appeared on the side of Bob Westbrook's tractor, and because the license tag was registered in Cardinal's name, there is an administrative or rebuttable presumption that the tractor was owned or controlled by Cardinal or that the person operating the tractor at the time of the accident was Cardinal's employee and was, at the time of the accident, acting within the line and scope of his employment. The plaintiffs cite a plethora of cases in support of that proposition. It is generally true that the registered owner of a license tag is presumed to be the owner of the motor vehicle the tag is issued for, Thompsonv. Havard, 285 Ala. 718, 235 So.2d 853 (1970). This presumption is rebuttable, however. Proctor v. State exrel. Duke, 389 So.2d 520 (Ala.Civ.App. 1980). We do not agree with the plaintiffs' contention concerning an administrative presumption in the present case. It is uncontroverted that Bob Westbrook owned the tractor.
Disputes such as the one sub judice have afforded this Court numerous opportunities to formulate a position on the evidentiary weight to be given administrative presumptions. On this point, we have said that an administrative presumption "is not an inference of fact, and that it has no intrinsic value as an inference, but that it serves in the place of evidence only until evidence to the contrary is adduced[,] when it becomes functus officio." Cruse-Crawford Mfg. Co. v. Rucker,220 Ala. 101, 102, 123 So. 897 (1929).
Having determined the issue of ownership, we now consider whether the Westbrooks were Cardinal's agents. Based upon the testimony adduced at trial, we are of the opinion that the question of agency should have been submitted to the jury for its determination. "Agency is determined by the facts and not by how the parties may characterize their relationship."Purnell v. City of Florence, 27 Ala. App. 516,175 So. 417 (1937). The uncontroverted testimony indicated that the load of wire was hauled to Atlanta, Georgia, at Cardinal's request and on its behalf pursuant to a lease agreement; that Bob Westbrook's tractor bore a tag that was registered in Cardinal's name; that Cardinal, and not the Westbrooks, was qualified with the Interstate Commerce Commission to engage in interstate commerce (i.e., the Westbrooks could pull a load in interstate commerce only under Cardinal's authority); and that all of the bills of lading were in the name of Cardinal Transport Company, Inc. Finally, from the testimony, it would appear that the driver, Dale Westbrook, was Cardinal's employee. The lease agreement presented in this case is somewhat analogous to the written agreement in Stevens v.Deaton Truck Line, 256 Ala. 229, 54 So.2d 464 (1951). In that case the plaintiff contended, and we agreed, that "by virtue of the . . . instrument . . . and the evidence as it related to the manner in which the parties operated . . . the relationship of master and servant existed between [the parties]." 256 Ala. at 233, 54 So.2d at 467-68. Another case that sheds light on this issue is Cox v. Howard HallCo., 289 Ala. 35, 265 So.2d 580 (1972), where we said:
 If an accident occurs while the driver is driving the leased vehicle, for which the lessee-motor carrier would have been liable if the lessor-owner had been driving, then the motor carrier would be liable. The employment of a driver by the lessor-owner *Page 489 
does not broaden or diminish his relationship to the lessee-motor carrier.
Cox, 289 Ala. at 42, 265 So.2d at 586.
Furthermore, the plaintiffs correctly state in their brief that "where one operates a motor carrier under a government franchise, he assumes liability for acts done by others to whom he grants permission to use his franchise and permit." He may not delegate his rights under his franchise and permit and thus avoid liability. See Trautman v. Higbie, 10 N.J. 239,89 A.2d 649 (1952); Felbrant v. Able, 80 N.J. Super. 587, 194 A.2d 491 (1963); Phillips v. American GeneralInsurance Co., 376 S.W.2d 808 (Tex.Civ.App. 1964);Dixie Stage Lines v. Anderson, 222 Ala. 673,134 So. 23 (1931); Western Ry. of Alabama v. Turrentine,197 Ala. 603, 73 So. 40 (1916). The reasoning in support of this rule is the notion that transportation of freight upon public highways, often by means of large trucks and trailers, is fraught with an enormous danger to the traveling public.Hodges v. Johnson, 52 F. Supp. 488 (W.D. Va. 1943).
There are other authorities in accord with these notions of liability. Restatement (Second) of Torts, § 428 (1965), provides:
 An individual or corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity.
The relevant federal legislation is found in 49 U.S.C. § 10927, which provides:
 The Interstate Commerce Commission may issue a certificate or permit to a motor carrier under section 10922 or 10923 of this title [Title 49] only if the carrier files with the Commission a bond, insurance policy, or other type of security approved by the Commission. The security must be sufficient to pay, not more than the amount of the security, for each final judgment against the carrier for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles under the certificate or permit, or for loss or damage to property (except property referred to in paragraph (3) of this subsection), or both. A certificate or permit remains in effect only as long as the carrier satisfies the requirements of this paragraph. [Emphasis added.]
Cardinal argues that the plaintiffs are precluded from prevailing on their claim because Dale Westbrook had delivered his load to its destination, Atlanta, Georgia, and was returning "empty." This, it claims, forecloses him from being within the line and scope of employment with Cardinal. In support of that argument, Cardinal cites Harbour v.Colonial Fast Freight Lines, Inc., 336 So.2d 1100 (Ala. 1976), for the proposition that the acts of going to and from one's workplace are not to be regarded as work for one's master but, rather, as acts for one's own purposes. We agree with the basic premise of Harbour; however, we are pressed to find any applicability whatsoever of Harbour to the facts sub judice. We opine that the exposure to liability visited upon the carrier while the truck proceeded on its journey loaded should also attach during its return trip while empty. Hodges v. Johnson, 52 F. Supp. 488 (W.D.Va. 1943). We reverse the Court of Civil Appeals' judgment insofar as it affirmed the judgment for Cardinal based on its directed verdict.
 II.
The Westbrooks argue here that the Court of Civil Appeals erred in holding that the trial court had improperly excluded evidence of hospital charges for psychiatric care that plaintiff Hicks maintains were a necessary expense incurred by her in the treatment of injuries arising from the accident. We affirm.
From the outset, we note that the general rule regarding the recovery of medical expenses, including hospital expenses resulting from personal injuries, is that a plaintiff may recover those medical expenses *Page 490 
that are reasonable and necessary. It is not disputed that the expenses Hicks incurred were reasonable and customary. Our only consideration goes to whether the hospital bills were a necessary expense for the treatment of injuries arising from the accident.
Having carefully reviewed the testimony adduced at trial, we are of the opinion that there exists sufficient evidence to support the admission of plaintiffs' Exhibit 25. This is true even though there was testimony offered suggesting that Hicks had a history of emotional instability prior to the accident. In his testimony concerning Hicks's medical condition, Dr. Garrett testified:
 I felt this lady had two problems that are very concurrent and very similar. One, I diagnosed her as a major depression, recurrent with melancholia, and I felt she also had suffered a post traumatic stress disorder due to the automobile accident.
Dr. Garrett later testified:
 In reviewing the charts, I feel the hospitalization was justified due to her symptoms.
Dr. Garrett definitely felt that the automobile accident was a factor contributing to her emotional state. The Court of Civil Appeals correctly reversed on this issue.
The judgment of the Court of Civil Appeals is affirmed in part and reversed in part, and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, JONES, ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
[1] The speed limit was 40 mph. He was driving at approximately 60 mph.