The trial of this cause resulted in a jury verdict for Defendants Herrington and Burt on their counterclaim alleging a *Page 2 
contract between Defendants and another, the obligations of which Plaintiff Central Soya allegedly agreed to fulfill. Central Soya's motion for a new trial was granted; Defendants' motion for reconsideration of the order granting a new trial was denied; and Defendants filed this appeal.
In denying Defendants' motion for reconsideration, the trial judge set out a summary of the facts of the case and the grounds for his decision to grant a new trial:
 "Attached to the Plaintiffs' Motion [for new trial] was a copy of the case of Gregory v. Hardy, 53 Ala. App. 705, [304 So.2d 209 (1974)], in which the case of Puckett v. Bates, 4 Ala. 390 [(1842)], was cited as controlling authority. The Court had never specifically considered these two cases previously. Upon consideration, the Court determined that it had erred in its charge to the jury of the trial of this case in regards to the Statute of Frauds issue in the same, that the error was to the severe detriment of the Plaintiff, and the Court, thereupon, set aside the Jury Verdict rendered against the Plaintiff, vacated its Judgment thereon and ordered a new trial. . . .
 "The facts of this case are contested. The Court is not now passing upon the facts, but, when viewed in a light most favorable to the Defendants, the facts would show that the Defendants, Herrington and Burt, entered into a contractual arrangement with Northeast Poultry and Egg Farm Co., Inc., wherein Herrington and Burt would feed, house, and care for certain baby chickens supplied them by Northeast Poultry. In a separate agreement, Northeast Poultry purchased feed on credit for its chickens from Central Soya Co., Inc., (Plaintiff) and granted the said Plaintiff a security interest in the chickens as collateral for its feed debt. After the chickens were placed with the Defendants, Herrington and Burt, and after they had partially performed their agreed obligations in regard to the chickens, Northeast Poultry became insolvent, confessed possession of the chickens by Plaintiff, Central Soya Co., under their security interest, and filed for bankruptcy. It is undisputed that Central Soya Co. took possession of the said chickens by Court Order. It is further undisputed that Central Soya Co. entered into an oral agreement with Herrington and Burt to pay them for continuing to care for the chickens in return for which Central Soya Co. would pay them for their services from the date Central Soya Co. took possession and control of the flock.[1] (Central Soya Co. paid Herrington and Burt for services rendered under this agreement.) It is disputed, however, as to what promises, if any, were made by Central Soya Co. in regard to the debt owed to Herrington and Burt by Northeast Poultry for services rendered up to the time of seizure. Herrington and Burt allege that Central Soya Co., acting through an agent, promised to pay the debt of Northeast Poultry Co. under the terms of the agreement entered into between Central Soya Co. and them. Central Soya denies such a promise and goes on to assert that even if such a promise had been made, the Statute of Frauds would prevent its being enforced. Further, it was undisputed that Herrington and Burt never released Northeast Poultry from the debt they allege Central Soya agreed to pay and continued to attempt to collect the same by filing a claim with the Bankruptcy Court in which Northeast Poultry's bankruptcy was pending. The issue of whether or not there was an agreement between Central Soya Co. and Herrington and Burt regarding Northeast Poultry's debt, and whether or not any such agreement was within the Statute of Frauds were the only real issues raised at trial." *Page 3 
The applicable portion of the Alabama Statute of Frauds (Code 1975, § 8-9-2) reads:
 "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
". . .
 "(3) Every special promise to answer for the debt, default or miscarriage of another; . . ."
The cases pointed out in Central Soya's motion for new trial, and referred to by the trial judge, reflect this Court's interpretation of subsection (3) of the Statute of Frauds. Those cases, and countless others, distinguish between a "collateral" agreement and an agreement that is "original" in nature:
 "The doctrine which distinguishes between an original promise — a new debt of the promisor — and a collateral undertaking — a guarantee or suretyship for the debt of a third person, is often difficult of application; but there are some tests, which may be regarded of controlling, though not conclusive consideration. The true test appears to be, whether the undertaking of the promisor was essentially a new debt of his own, while the payment of the third person's debt was a collateral or incidental consequence, or was the latter its principal and directed purpose. [Cite omitted.] Generally, any promise to pay another person's debt, which is not discharged or released by the terms of the promise, or other contemporaneous arrangement, is within the statute. To this rule there are exceptions. A party may make a valid oral contract, which operates to create a new debt of his own, if founded on a new and independent consideration, though the effect of the payment is to pay another's debt. In order, however, to have this effect, the essence of the new undertaking must be the payment of the promisor's own debt, by paying the debt of a third person." Clark Wadsworth v. Jones, 85 Ala. 127, 130 (1887).
See, also, Gregory v. Hardy, 53 Ala. App. 705, 304 So.2d 209
(1974); Westmoreland v. Porter, 75 Ala. 452 (1883); Puckett v.Bates, 4 Ala. 390 (1842).
This distinction between "original" and "collateral," focuses on the nature of the promise made.
 "A promise which is within the Statute is often said to be `collateral'; if not within the Statute, it is called `original.' `The terms collateral or original promise did not occur in the Statute, and have been introduced by courts of law to explain its objects and expound its true interpretation.'
 "Although the terms `original' and `collateral' do not obviate the difficulty of determining the ultimate question as to whether a promise is or is not within the Statute, they afford a convenient mode of expression for distinguishing between the cases within and those without the Statute: `The terms original and collateral promise, though not used in the Statute, are convenient enough to distinguish between the cases where the direct and leading object of the promise is to become the surety or guarantor of another's debt, and those where although the effect of the promise is to pay the debt of another, yet the leading object of the undertaker is to subserve or promote some interest or purpose of his own.'" (Emphasis supplied.) S. Williston, A Treatise on the Law of Contracts § 463 (W. Jaeger 2d ed. 1960).
The sole issue presented on this appeal, then, is the propriety of the trial judge's granting the motion for new trial on the grounds that his oral charge to the jury with regard to the Statute of Frauds aspect was erroneous and thus caused "severe detriment" to Central Soya.
It is unquestioned that:
 "[t]he power of trial courts to set aside verdicts, while inherent in order to prevent irreparable injustice, is a power hesitantly exercised because of the solemnity of a jury verdict regarded in background *Page 4 
of that most precious of rights, the right of trial by jury. `The power should be exercised only when it affirmatively appears that the substantial ends of justice require the examination of the facts by another jury.' Cobb v. Malone, 92 Ala. 630, 9 So. 738
[(1890)]."
Walker v. Henderson, 275 Ala. 541, 544, 156 So.2d 633 (1963). When it is apparent, then, that there has been a serious miscarriage or a total failure of justice, the trial judge is "under a duty to set aside [the verdict] and grant a new trial." State v. Oliver, 288 Ala. 32, 256 So.2d 866 (1972). Further, once that power has been exercised by the trial judge, its consequences are attended by a presumption of correctness, and the trial judge's decision will not be overturned by the appellate court unless the evidence of record plainly and palpably shows that the trial court was in error. Hill v.Cherry, 379 So.2d 590 (Ala. 1980).
We recognize the long-standing rule as stated by the Court of Civil Appeals in American Service Mutual Insurance Company v.Grizzard, 356 So.2d 191 (Ala.Civ.App. 1978):
 "[A]n incorrect charge or even a misleading charge to the jury may be the basis for the granting of a new trial and, if such motion is granted, it will not be overturned on appeal. See Montgomery City Lines, Inc. v. Scott, 248 Ala. 27, 26 So.2d 200 (1946). See also Proctor v. Coffey, 227 Ala. 318, 321, 149 So. 838, 840-41 (1933), wherein the Supreme Court of Alabama stated:
 `Moreover, since the charge was misleading, if the trial court in its discretion found that by reason of such tendency a new trial should have been granted, his act in that respect will be reviewed with the same presumption as is usual in the exercise of such power. . . .'"
356 So.2d at 193.
Furthermore, as stated in Montgomery City Lines, Inc. v.Scott, supra:
 "Should we adopt the construction that, at most, the charge was merely misleading, a reversal would still be unwarranted in view of the favorable presumption attending the ruling of the trial court. By granting the new trial, the misleading and injurious tendencies of the charge were thus declared and no case is shown for overriding this presumption."
248 Ala. at 31.
The discretionary power of the trial court, however, is not so broad as to obviate the basic principle expresed in A.R.C.P. 51:
 "The refusal of a requested, written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's oral charge or in charges given at the request of the parties."
While this language from Rule 51 is stated in the context of an appellate review of a trial court's refusal of a requested, written instruction, nonetheless, it is a correct statement of the polestar that guides the trial judge's review of a refused, written instruction challenged by a ground of a motion for new trial. That is to say, where the trial court's oral charge is a full, complete, and accurate statement of the applicable law, the trial judge's refusal of a requested, written instruction, although a correct statement of the law, serves as no legal basis for the granting of a new trial. For an analogous situation, in which the trial judge was reversed for granting a new trial to one of several defendants, see HarnischfegerCorporation v. Harris, 280 Ala. 93, 190 So.2d 286 (1966).
When considering a motion for new trial raising the refusal of a requested, written instruction as a ground, the trial judge, of course, may compare the refused instruction with his oral charge in determining whether the same rule of law was substantially and fairly given to the jury. But when such comparison does not disclose that the oral charge was either incorrect or, in some material aspect, incomplete or misleading, the trial judge is not authorized to grant a new trial on such ground. *Page 5 
We have reviewed the trial court's oral charge and have extracted those portions dealing with the Statute of Frauds aspect of Defendants' counterclaim against Central Soya:
 "[S]ection 8-9-2 of the Code of Alabama contains a Statute that is commonly known [as] the Statute of Frauds. . . . That Statute states in substance as follows: `In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing every special promise to answer for the debt, default or miscarriage of a note.' . . . [T]he general rule in the State of Alabama, and I instruct you that it is the law in the State of Alabama, . . . that an oral promise by one person or one party to another person or another party to pay the debt or answer for the default of a third person, without more, is not valid and it is not enforceable. However, . . . the promise of one person to pay the debt of another, made upon a new and valuable consideration beneficial to the promisor — the promisor is the person making the promise — is not within the Statute of Frauds. Thus, Ladies and Gentlemen, if you find in this case that . . . Defendants have proven to your reasonable satisfaction that Central Soya Company entered into an agreement with them whereby Central Soya Company promised to answer for the debt of Northeast Poultry, that is, promised to pay some sum of money which may have been owed to the Defendants by Northeast Poultry Company prior to the date of that agreement. Then, unless you find that any such promise was made without a new and valuable consideration beneficial to Central Soya Company, and flowing to it from [Defendants], then such promise to pay the debt of Northeast Poultry Company to [Defendants], if there be any, would not be enforceable under Alabama law. It would be void within the meaning of, or within the terms of the Statute of Frauds. If, however, . . . you find that there was such a promise, that is, the promise to answer for the debt of Northeast Poultry Company to [Defendants] and that such promise was based upon a new and valuable consideration flowing from [Defendants] to Central Soya Company and which was beneficial to Central Soya Company, then such promise or such agreement would not be within the voiding provisions of the Statute of Frauds." (Emphasis supplied.)
We find no error in the charges quoted from. While the terms
"original" and "collateral" do not appear in the trial judge's charges, the distinction between the two are clearly set out by the judge. The nature of both a "collateral" and an "original" promise or agreement are sufficiently defined by the trial judge so as to give the jury an adequate legal foundation upon which to base their deliberations and ultimate verdict in the case. The court's use of the emphasized portion of the charge, when taken in full context with the entire instruction, can hardly be said to be either incomplete or misleading. Indeed, these definitive terms are even more explanatory of the applicable legal principles than are the words "collateral" and "original" — the terms used in the requested, written instruction.
The trial judge's failure to use "collateral/original" language in his charge did not diminish the sufficiency of his interpretation of § 8-9-2 (3) and, therefore, did not cause "severe detriment" to Central Soya, nor did it result in the serious miscarriage or total failure of justice which ordinarily warrants the granting of a motion for new trial.
We hold, then, that the oral charge of the trial judge was proper in its definition of the legal distinction between an "original" and "collateral" promise or agreement as contemplated by § 8-9-2 (3), and that the motion for new trial was improperly granted. This cause, therefore, is reversed and remanded with instructions to reinstate the judgment appealed from, in accordance with this opinion.
REVERSED AND REMANDED. *Page 6 
TORBERT, C.J., and MADDOX, FAULKNER and ADAMS, JJ., concur.
ALMON, SHORES, EMBRY and BEATTY, JJ., dissent.
[1] Defendants claim that an "agreement" was not reached between Defendants and Central Soya as to this aspect of the process. Rather, say Defendants, they were told by an agent of Central Soya, on January 16, 1980, that Defendants would care for the birds, under the terms of the court's TRO, and that Defendantswould be compensated by Central Soya for such care from the time when the TRO went into effect (January 10, 1980).