William Ed Fendley appealed from the trial court's denial of his motions for directed verdict and motion for judgment notwithstanding the verdict or, in the alternative, for a new trial following a jury verdict against him and in favor of Dozier Hardware Company, Inc. (Dozier), in the amount of $13,876.88. We affirm.
The issues before this Court are whether the trial court erred in denying Fendley's motions for directed verdict and motion for JNOV or, in the alternative, for a new trial.
Dozier is a hardware store, and Fendley is a building contractor. Jerry Ogle is a subcontractor. Most of the remaining material facts of the case are in dispute.
Dozier filed a complaint against Fendley, alleging account stated in the amount of $13,876.88; indebtedness for goods sold and delivered to Fendley; and account stated between Dozier and Fendley for goods sold and delivered by Dozier to Fendley's servant, agent, or employee, Jerry Ogle. Following several responsive pleadings by both parties, Dozier amended its complaint, alleging that Fendley guaranteed Jerry Ogle's account with Dozier. Fendley's answer to the amended complaint denied Dozier's allegations and affirmatively pleaded the defense of the Statute of Frauds.
The case went to trial on February 16, 1983. Fendley filed a motion for directed verdict at the close of Dozier's evidence, and again at the close of all the evidence, based upon two Statute of Frauds sections: Code of 1975, § 8-9-2, and §7-2-201. The trial court denied these motions. The jury returned a verdict in favor of Dozier for $13,876.88 plus 8% interest. The trial court denied Fendley's motion for JNOV or, in the alternative, for a new trial, and Fendley appealed to this Court.
Mr. W.H. Andrews, an officer of Dozier and a witness at trial, testified that at Fendley's request Dozier opened an account in the name of Jerry Ogle with the understanding that Fendley would be responsible for paying the account. Furthermore, Andrews stated that Fendley was the only person who paid on the account and that he gave assurances to Dozier that he would pay the account balance.
Another witness for Dozier was Mr. Gerald Corgill, also an officer of the company. He testified that Fendley told him that he had set up the Jerry Ogle account to save himself a lot of leg work and that he would be responsible for the account.
Copies of five checks from Fendley's company, A.A. E. Co., Inc., were admitted into evidence. The record shows that these checks were made payable to Dozier, signed by Fendley, and one had the notation "For materials (Jerry)" on it. Andrews testified that the proceeds from four of the checks and a portion of the proceeds from the fifth check (plaintiff's Exhibit No. 2) were applied to the Ogle account at Fendley's request.
Fendley, on the other hand, testified that he never authorized Dozier to set up an account in the name of Jerry Ogle and never guaranteed payment of Jerry Ogle's account. He stated that the payments to Dozier were made with money owed to Ogle on subcontracts.
It is undisputed that no evidence exists of any written authorization, agreement, or memorandum concerning the alleged oral agreement between Fendley and Dozier. Therefore, Fendley asserts that the alleged agreement is void under the Statute of Frauds, and he cites Code of 1975, § 8-9-2 and § 7-2-201, as authority for that assertion. He further contends that the trial court erred in denying his motions for directed verdict and JNOV or, in the alternative, for a new trial, because Dozier did not meet its burden of proving that the agreement did not come within the statutes. To the contrary, Fendley argues, the verdict was against the great weight of the evidence. The issue, then, is the sufficiency of the evidence that the alleged agreement was outside of those Statute of Frauds sections. The familiar rule of appellate *Page 1238 
review was recently stated in Casey v. Jones, 410 So.2d 5, 7-8
(Ala. 1981):
 "The standard of judicial review for testing a motion for directed verdict is identical to that for testing a motion for J.N.O.V. Evidence sufficient to take the case to a jury as against a motion for directed verdict is likewise sufficient to withstand a motion for J.N.O.V. . . .
". . .
 ". . . A post-judgment motion for a new trial, grounded on a claim that `the verdict is against the great weight and preponderance of the evidence,' should be granted only in extreme cases, when to let the verdict stand, though supported by some evidence, would be palpably wrong and manifestly unjust."
The presumption of correctness of a jury verdict is strengthened when the trial court overrules the motion for a new trial. Id.
Section 8-9-2 provides:
 "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
". . .
 "(3) Every special promise to answer for the debt, default, or miscarriage of another;"
This Court recently considered § 8-9-2 in Herrington v.Central Soya Co., 420 So.2d 1 (Ala. 1982). The issue before the Court in Herrington was whether the trial court erred in granting a motion for new trial based upon the grounds that his oral charge to the jury with regard to § 8-9-2 was erroneous and caused prejudice to the movant. While that issue is not the one before this Court, the discussion of that statute in the decision is relevant. In Herrington, we recognized that the Alabama courts have distinguished "collateral" agreements from "original" agreements in determining which promises are within the Statute of Frauds and which are not. "Collateral" agreements are those in which the object of the promise is to become the guarantor of another's debt; these are within the statute and must be in writing to be enforceable. Herrington, 420 So.2d at 3. "Original" agreements are those in which theeffect of the promise is to pay the debt of another, but theobject of the promise is to promote some purpose of the promisor. Id.
Another test for determining which promises are within the Statute of Frauds is set out in Boykin McRae v. Dohlonde Co., 37 Ala. 577, 582 (1861):
 "When, therefore, an action is brought against one charging him with the value of goods delivered to another, and on his promise to pay; and it is set up in defense, that the promise was to pay the debt of another, and was not in writing, the decisive question is, to whom was the credit given. If the credit was given solely to the defendant — that is, if the goods were really sold to him, though delivered to another — the statute is then out of the case. But, if the whole credit was not given to the defendant — that is to say, if any credit at all was given to the party receiving the goods — the promise of the defendant is collateral, and within the statute. . . ."
The Court continued:
 "[W]hen there is any conflict of evidence upon the subject, the weight to be given to any particular circumstance should be left to the jury, who, in deciding the question, to whom the credit was given, should take into consideration `the extent of the undertaking, the expressions used, the situation of the parties, and all the circumstances of the case.' . . ." 37 Ala. at 584.
Based upon the preceding authorities and in light of the conflicting evidence, a question of fact existed concerning to whom Dozier extended credit, and whether the alleged promise was "collateral" or "original." Therefore, the trial court properly denied Fendley's motions for directed verdict based upon his assertion that the oral agreement was void under §8-9-2 and submitted this question to the jury. It *Page 1239 
follows, therefore, that the motion for JNOV based upon this ground was also properly denied.
From our review of the record, it further appears that the verdict is not so against the great weight and preponderance of the evidence as to be palpably wrong and manifestly unjust. Accordingly, the trial court did not err in denying Fendley's motion for a new trial based upon the defense of § 8-9-2.
Fendley's motions were also based upon another statute of frauds provision, Code of 1975, § 7-2-201, which states:
 "(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon, but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
". . .
 "(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable:
". . .
 "(c) With respect to goods for which payment has been made and accepted or which have been received and accepted (section 7-2-606)."
Fendley contends that Dozier did not move that the alleged agreement was outside of the coverage of § 7-2-201 and that, consequently, the agreement is void because it was not in writing. Under this section, no writing is required with respect to goods which have been received or accepted. The official comment to § 7-2-201 includes the following statement pertaining to partial performance: "Receipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both parties that a contract actually exists."
In Engel Mortgage Co. v. Triple K Lumber Co., 56 Ala. App. 337,341, 321 So.2d 679, 682 (1975), the Court of Civil Appeals aptly stated:
 "This text [§ 7-2-201] clearly indicates that, even where the value of the goods named to a contract exceeds $500, the absence of a signed writing does not bar seller from recovering the price of goods when the following are found to have happened: (1) an agreement of purchase and sale regarding the goods has actually been reached; (2) delivery of the goods in the manner, time and place agreed upon has been accomplished; and (3) any act or omission constituting acceptance of the goods under UCC § 2-606 has been manifested."
Under the evidence, the jury could have reasonably concluded that Fendley and Dozier had reached an agreement of purchase and sale regarding the goods and that the goods had been delivered and accepted. Therefore, sufficient evidence was presented at trial to avoid a directed verdict or JNOV for Fendley based upon § 7-2-201. Additionally, the jury's verdict is not against the great weight and preponderance of the evidence; and, therefore, the trial court did not err in denying Fendley's motion for a new trial.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur. *Page 1240