On December 23, 1999, Dudley W. Carter opened a joint money-market account with Sheila R. Holland at First Commercial Bank in Huntsville. Carter and Holland were dating at the time. The post-office box number shown on the parties' joint bank account was used by both Carter and Holland. The account was set up so that either Carter or Holland could withdraw money from the account without prior approval from the other party. The account document reflects on its face that the account was held in joint tenancy with the right of survivorship; the document includes the date of birth and the Social Security number of each party.
At the time when the account was opened, Carter was involved in legal proceedings based on an attempt to modify the provisions of his divorce judgment so as to obtain custody of his child. Six days after the account was opened, and in connection with the modification proceeding, Carter represented to the court, in a verified motion, that he had remarried and had established a stable home and a stable lifestyle. In the present action, Holland testified in an affidavit that she was present at Carter's meeting with his divorce *Page 834 
attorney when the motion was being prepared and that she was the "new wife" referred to in Carter's verified motion — even though, in truth, she had never been married to Carter.
Holland alleges in her affidavit that Carter gave her many gifts of jewelry and money and that he had promised to give her, as a Christmas gift, a nightclub; she said she had always dreamed of owning and managing a nightclub. Holland purchased the nightclub with several certified checks drawn on the joint account, checks that she alone drew. These checks were dated December 30 and 31, 1999, and January 4, 2000. They totaled $30,713.64. Holland claims she had Carter's permission to write the checks because, she says, the nightclub was her Christmas present. Holland and Carter subsequently ended their relationship.
On June 1, 2000, Holland received a letter from an attorney representing Carter, seeking to recover a debt Carter claimed Holland owed him, in the amount of $49,000.[1] On the day after she had received the letter from Carter's attorney, Holland received a handwritten love letter from Carter, which is included in the record. That letter made no reference to any outstanding debt. Several days after that, Carter sent Holland a card to let her know he was thinking about her; on that card, Carter did not refer to the alleged debt.
Carter sued Holland for the $49,000 on June 26, 2000. Holland moved for a summary judgment on July 28, 2000. She supported the motion with her own affidavit; bank statements relating to the joint account; copies of the certified checks she had drawn for the purpose of purchasing the nightclub; a copy of the lease she had executed, in her name alone, for the nightclub premises; a copy of the June 2, 2000, love letter Carter had written her; a copy of the card that followed the letter; the letters exchanged between Holland and Carter's attorneys; and a copy of the sworn motion for custody modification in which Carter had represented that he had remarried. On September 26, 2000, Carter filed a response to the motion for summary judgment. In that response, he relied upon §5-24-11(b), Ala. Code 1975, for the proposition that all persons listed on an account own the account in proportion to the net contribution of each person unless clear and convincing evidence shows a different intent. Carter supported his response with his own affidavit, in which he averred that Holland was his former girlfriend and that he had lent her funds from the joint account for the purchase of a nightclub. In his affidavit, Carter alleged that Holland had promised to repay the money; that he had deposited all of the money in the account; and that he had never intended to make a gift of any of the money. Holland responded to Carter's response, and with her response she filed all of the account documents.
The trial court entered a summary judgment in favor of Holland. Carter appealed, claiming that he had created a genuine issue of material fact as to whether he had a donative intent when he deposited the money into the account, and arguing, therefore, that the summary judgment was improper. We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule *Page 835 
56(c)(3), Ala.R.Civ.P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala. 1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee, 592 So.2d at 1038. "Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Westv. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989); see Ala. Code 1975, § 12-21-12(d); West, 547 So.2d at 871;Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala. 1989), for further discussion of the application of the summary-judgment standard.
Carter contends that the summary judgment was improper because, he says, Holland presented no clear and convincing evidence to support a finding that the money she withdrew from the account was a gift.
Carter further argues that § 5-24-11(b), Ala. Code 1975, governs the ownership of the funds and that, because he was the source of all of the funds contributed to the account, he is the rightful owner of those funds. Section 5-24-11(b) provides:
 "(b) During the lifetime of all parties, an account belongs to the parties in proportion to the net contribution of each to the sums on deposit, unless there is clear and convincing evidence of a different intent. . . ."
This argument is without merit. Section 5-24-11(b) appears in Article 2 — the Uniform Multiple-Person Accounts Act, which became effective in March 1998. Section 5-24-6 deals with the applicability of that Article:
 "The provisions of Article 2 concerning beneficial ownership as between parties or as between parties and beneficiaries apply only to controversies between those persons and their creditors and other successors, and do not apply to the right of those persons to payment as determined by the terms of the account."
We also note this statement appearing in the fourth paragraph of the Comment following § 5-24-11:
 "This section does not undertake to describe the situation between parties if one party withdraws more than that party is entitled to as against the other party. . . . Rights between parties in this situation are governed by general law other than this Act."
Alabama law provides that unexplained transfers of money are presumed to be debts and not gifts. Livingston v. Tapscott, 585 So.2d 839 (Ala. 1991). Holland carries the burden of establishing by clear and convincing evidence that the money she withdrew from the money-market account was a valid inter vivos gift. First Alabama Bank of Montgomery v. Adams,382 So.2d 1104, 1110 (Ala. 1980). Assuming Carter is correct in alleging that he deposited all of the funds in the account, then Holland, in order to make a prima facie showing that the amounts she withdrew were gifts, must present substantial evidence indicating: 1) a donative intent; 2) delivery; and 3) acceptance. Dial v. Dial, 603 So.2d 1020 (Ala. 1992);Ford v. Stinson, 679 So.2d 1104 (Ala.Civ.App. 1996).
The account documents contained in the record clearly reflect on their face that Holland and Carter were both signatories on the account and that either *Page 836 
of them was empowered to withdraw the funds without the consent of the other. Both had equal access to the funds, and the establishment of an account in joint tenancy with the right of survivorship in favor of another constitutes evidence from which a fact-finder can infer that the owner of the funds by establishing the account in both names, intended a gift. See Livingston v. Powell, 257 Ala. 38, 57 So.2d 521 (1952); Fordv. Stinson, 679 So.2d 1104 (Ala.Civ.App. 1996); Lovett v. Uptain,450 So.2d 113 (Ala.Civ.App. 1983).
Holland also filed, in support of her summary-judgment motion, the checks drawn on the money-market account, bearing only Holland's signature and totalling $30,713.64. It is undisputed that the bank had honored the checks and that the face amounts of the checks had been paid in full; thus, the checks evidenced delivery. Holland clearly presented evidence of an acceptance of the money, by the evidence that she drew the checks and that she signed the lease and her testimony in her affidavit that the money was a Christmas gift to her. We conclude that Holland presented evidence, which a fact-finder could find to be clear and convincing, sufficient to make a prima facie showing that the money was a valid gift to her from Carter.
In opposition to the evidence Holland filed in support of her motion for summary judgment, Carter presented his own affidavit, in which he stated that the sums Holland withdrew from the money-market account had all been deposited to that account by him and that he had never intended them to be a gift. Carter further stated in his affidavit that the sums Holland withdrew from the account were intended by the parties to be a loan, which he said Holland was to repay from her savings and investments and from borrowing other sums. This court must review a summary-judgment record in a light most favorable to the nonmovant and must resolve all doubts in favor of the movant. Hanners v. Balfour Guthrie, Inc.,564 So.2d 412 (Ala. 1990). Though it is a close question, we conclude that Carter's affidavit constitutes substantial evidence that successfully rebutted the prima facie case established by Holland and created a genuine issue of material fact as to whether the funds in question had been intended as a loan or as a gift. Therefore, the trial court improperly entered the summary judgment in favor of Holland.
Holland contends in her brief on appeal that the Statute of Frauds, specifically § 8-9-2(7), Ala. Code 1975, precluded the court's consideration of Carter's affidavit. The Statute requires a writing for an agreement "to lend money, delay or [forebear] repayment thereof . . . except for consumer loans with a principal amount financed less than $25,000." The plain language of the Statute requires an agreement for commitments to lend money, not to repay money that has been borrowed. It is well established that the "Statute of Frauds requiring certain contracts to be in writing applies to executory and not to executed
contracts." Scott v. Southern Coach Body Co., 280 Ala. 670,673-74, 197 So.2d 775, 777 (1967) (emphasis added). Once the money has been lent, the agreement becomes an executed contract as to the lender — all that remains for the lender to do is to receive the consideration for his loan (or performance), and the Statute of Frauds is no longer applicable.
The judgment is reversed and the case is remanded for further proceedings consistent with this opinion. Because we find merit in the issue raised in Carter's appeal, Holland's request for an attorney fee, pursuant to Rule 38, Ala.R.App.P., is denied.
REVERSED AND REMANDED. *Page 837 
Yates, P.J., and Pittman, J., concur.
Crawley and Murdock, JJ., concur in the result.
[1] The record provides no clear explanation of the disparity between the amount Carter claims Holland owes him and the amount of the checks Holland had drawn on the account to fund the purchase of the nightclub.