Rockey R. Rozell appeals from a judgment of the Madison Circuit Court concluding that Rozell's claims against his sister, Sherry Childers, and her husband, Jimmy Childers, were barred by §8-9-2(7), Ala. Code 1975, a portion of Alabama's Statute of Frauds. We reverse and remand.
The parties' dispute arises from a transaction involving the purchase of a truck in October 2000 from Daniel R. Spencer, who at that time was Jimmy Childers's work supervisor. The record contains two copies of negotiable instruments that were issued by Regions Bank on October 13, 2000, each in the amount of $6,000. Both instruments are made payable to the order of Spencer; the name of the "remitter" is listed on both instruments as "Rockey R. Rozell," and the words "Loan Proceeds" *Page 1245 
are printed below Rozell's name on each instrument.
Although Spencer was undisputedly paid $12,000 for the purchase of a truck, there is sharp conflict in the parties' evidence concerning the nature of the transaction. Rozell testified that he lent $12,000 to the Childerses and that the $12,000 came from funds that he had borrowed from Regions Bank by pledging a parcel of rental property as security. Rozell stated that he had given the Childerses the two instruments, made payable to the order of Spencer, because the Childerses had requested that he lend them money in order for them to buy a truck that Jimmy Childers, who had worked for Spencer as a truck driver, would then use as a truck driver. Rozell testified that he and the Childerses had orally agreed that the Childerses would repay Rozell the $12,000 plus interest at a rate of 14.9 percent per annum in monthly installments of $343.15 over a period of 48 months; an amortization schedule that Rozell claimed to have given to the Childerses was admitted into evidence. However, Rozell added that the Childerses had made only 11 payments on the alleged loan between October 2000 and September 2001 and that the Childerses had made no further payments to him despite his having sent them a letter requesting payment in full by December 31, 2001.
In contrast to Rozell's evidence, which characterized the transaction as a loan to the Childerses so that the Childerses could buy and operate a truck owned by Spencer, the evidence presented by the Childerses painted a very different picture of the transaction. Jimmy Childers testified that he and Rozell had agreed that Rozell would purchase the truck using money borrowed from Regions Bank and that Jimmy Childers would thereafter operate the truck as Rozell's agent "until the truck was paid for," i.e., until enough money was earned through that business arrangement to repay the Regions Bank loan. Jimmy Childers testified that the plan to purchase the truck had failed when Spencer gave Jimmy Childers a certificate of title that did not show Spencer as the sole owner of the truck and that attempts to obtain reissuance of the title certificate with Rozell shown as a lienholder of the truck had been unsuccessful; according to Jimmy Childers, he then informed Spencer that "if he couldn't do the title, he could get the truck back." Jimmy Childers testified that various payments he and Sherry Childers had made to Rozell, rather than being loan payments, were actually rental payments made by Spencer to Rozell through Jimmy Childers (apparently acting as Rozell's agent) for Spencer's continued use of the truck after its sale; according to Jimmy Childers, those payments were to have been made only until the matter of the truck's title was settled. Although the Childerses did not present any documents to support their version of events, they did testify that Rozell's wife had obtained a wireless-telephone account for Jimmy Childers's use and that the Rozells had listed Jimmy Childers on that wireless-telephone account as "their driver."
Rozell sued the Childerses in the Madison Circuit Court, asserting breach-of-contract, account-stated, and quasi-contract claims and seeking $10,759.89 plus interest, attorney fees, and costs. The Childerses denied liability in their answer, but they did not plead any affirmative defenses. At the conclusion of the ore tenus proceeding at which the foregoing evidence was adduced, the trial court asked whether either party "want[ed] to say anything about the statute of frauds," to which both parties replied in the negative. The trial court then stated as follows: *Page 1246 
 "In this case, judgment is for the defendants. Code Section 8-9-2(7) requires that every agreement to lend money except for consumer loans with the principal amount of less than $25,000 be in writing. I note that the Alabama Rules of Civil Procedure say that the Statute of Frauds must be affirmatively pled and that's at [Rule] 8(c), I believe. However, the Alabama Rules of Civil Procedure also say at [Rule] 15(b) that the pleadings can be conformed to the proof.
 "The proof in this case without objection was that there was an agreement to lend money, which was not a consumer loan, as I understand the definition of that term. Conforming the pleadings to the proof, the Statute of Frauds bars the complainant's claims since the proof at trial without objection indicates that the loan was oral and is not a consumer loan.
". . . .
"That will close this case at the trial level."
Although the trial court had not yet rendered a judgment in conformity with Rule 58, Ala. R. Civ. P., Rozell filed a motion requesting that the trial court either order a new trial or alter, amend, or vacate its "judgment." In that motion, which the trial court denied on July 18, 2003, Rozell contended that §8-9-2(7), Ala. Code 1975, did not apply in this case because, he alleged, that statute had been held not to apply to agreements to repay money that had already been borrowed; he also contended that the defendants had irrevocably waived the Statute of Frauds as a defense and that they were estopped to rely upon the Statute of Frauds. Rozell filed a notice of appeal to this court; we remanded the cause, ordering the trial court to enter in compliance with Rule 58, Ala. R. Civ. P. Because a proper judgment in favor of the Childerses has now been entered, we now reach the merits of Rozell's appeal, reviewing the trial court's judgment "de novo because the dispositive issue presents a question of law." Kershaw v. Kershaw, 848 So.2d 942, 949 (Ala. 2002).
Section 8-9-2, Ala. Code 1975, provides that certain agreements are void "unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith" or by some other person having written authorization to sign on the party's behalf. Among other agreements that our Legislature has mandated in § 8-9-2 to be in writing in order to be valid is "[e]very agreement orcommitment to lend money, delay or forebear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000." Ala. Code 1975, § 8-9-2(7) (emphasis added). The trial court's judgment in favor of the Childerses is based upon its application of that statute to the evidence adduced by Rozell indicating that Rozell had agreed to, and did, lend $12,000 to the Childerses so that they could purchase a truck and that the Childerses had agreed, in return, to repay that loan in monthly installments over 48 months. In the trial court's view, such a loan agreement would fall within § 8-9-2(7) and would be void and unenforceable.
However, the text of § 8-9-2(7) refers to an "agreement" or "commitment" to lend money. Alabama law recognizes a difference between agreements whereby money is lent in return for terms of repayment and so-called "loan commitment" agreements,i.e., "`[a] lender's binding promise to a borrower to lend a specified amount of money at a certain interest rate, usu [ally] within a specified period and for *Page 1247 
a specified purpose (such as buying real estate).'" ArmstrongBus. Servs., Inc. v. AmSouth Bank, 817 So.2d 665, 673-74 (Ala. 2001) (quoting Black's Law Dictionary at 948 (7th ed. 1999)). Thus, in Carter v. Holland, 825 So.2d 832 (Ala.Civ.App. 2001), we held that, notwithstanding the provisions of § 8-9-2(7), the trial court[1] erred in entering a summary judgment in favor of Sheila R. Holland, one owner of a jointly held money-market bank account, on claims brought against her by Dudley W. Carter, the other owner of the account, seeking repayment of moneys she had withdrawn from the account:
 "In opposition to the evidence Holland filed in support of her motion for summary judgment, Carter presented his own affidavit, in which he stated that the sums Holland withdrew from the money-market account had all been deposited to that account by him and that he had never intended them to be a gift. Carter further stated in his affidavit that the sums Holland withdrew from the account were intended by the parties to be a loan, which he said Holland was to repay from her savings and investments and from borrowing other sums. . . . Though it is a close question, we conclude that Carter's affidavit constitutes substantial evidence that . . . created a genuine issue of material fact as to whether the funds in question had been intended as a loan or as a gift. Therefore, the trial court improperly entered the summary judgment in favor of Holland.
 "Holland contends in her brief on appeal that the Statute of Frauds, specifically § 8-9-2(7), Ala. Code 1975, precluded the court's consideration of Carter's affidavit. The Statute requires a writing for an agreement `to lend money, delay or [forebear] repayment thereof . . . except for consumer loans with a principal amount financed less than $25,000.' The plain language of the Statute requires an agreement for commitments to lend money, not to repay money that has been borrowed. It is well established that the `Statute of Frauds requiring certain contracts to be in writing applies to executory and not to executed contracts.' Scott v. Southern Coach Body Co., 280 Ala. 670, 673-74, 197 So.2d 775, 777 (1967) (emphasis added). Once the money has been lent, the agreement becomes an executed contract as to the lender — all that remains for the lender to do is to receive the consideration for his loan (or performance), and the Statute of Frauds is no longer applicable."
825 So.2d at 836. Accord Ades v. Werther, 256 Ga.App. 8, 10,567 S.E.2d 340, 343 (2002) (reversing a summary judgment in favor of borrower under alleged oral loan contract; rejecting borrower's Statute of Frauds argument on the theory that "this case does not involve a commitment to lend money, but money already lent").
As we have stated, the trial court's judgment in favor of the Childerses was based upon its determination that "the loan was oral and was not a consumer loan" — i.e., the trial court's judgment was based on the premise that if a loan was made to the Childerses, any agreement to repay that loan was void because it was not in writing. On the authority of Carter, we conclude that any oral agreement on the part of the Childerses to repay money already lent by Rozell would fall outside § 8-9-2(7). Similarly, although the Childerses have claimed that another subsection *Page 1248 
of the Statute of Frauds, § 8-9-2(1), which renders void "[e]very agreement which, by its terms, is not to be performed within one year from the making thereof," bars Rozell's claims, there is no evidence that the loan agreement to which Rozell testified contained any term that barred the Childerses from repaying the purportedly borrowed money within one year. See Stephens v.Stephens, 680 So.2d 329, 333-34 (Ala.Civ.App. 1996) (denying Statute of Frauds challenge to enforceability of loan agreement where note "contain[ed] no express agreement or stipulation by the parties that prevented [the borrower] from fully performing within a one-year period"). We therefore conclude that the Statute of Frauds does not bar Rozell's claims.
The Childerses, in addition to relying on the Statute of Frauds, also contend on appeal that the trial court's judgment is correct because, they say, Rozell did not prove by a preponderance of the evidence that they ever agreed to repay him; relying upon their transcribed trial testimony, they urge this court to affirm the judgment on the basis that Rozell failed to meet his burden of proof. To the extent that the Childerses' argument challenges the sufficiency of Rozell's evidence, we conclude to the contrary; in our view, Rozell adduced substantial evidence, through his testimony and his wife's testimony, from which the trial court could properly have found, under §12-21-12(a) and § 12-21-12(d), Ala. Code 1975, that he lent $12,000 to the Childerses and that the Childerses agreed to repay that sum, plus interest, over a 48-month period in monthly installments. Whether that evidence outweighs the evidence adduced by the Childerses is a wholly different matter, and for this court to address that issue in this appeal would, in our view, usurp the role of the trial court to act as the fact-finder in this case. "[T]he law is settled that weighing evidence is not the usual function of an appellate court," and that principle "is especially true where, as here, the assessment of the credibility of witnesses is involved." Knight v. Beverly Health Care BayManor Health Care Ctr., 820 So.2d 92, 102 (Ala. 2001).
Because we have concluded that the Statute of Frauds does not bar Rozell's claims, and because the trial court's judgment in favor of the Childerses is explicitly based on a holding to the contrary, we reverse that court's judgment.[2] We remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and MURDOCK, JJ., concur.
[1] The trial judge in Carter was the same judge who entered the judgment being reviewed in this case.
[2] In light of our conclusion that the trial court's judgment is due to be reversed on the basis that the Statute of Frauds does not bar Rozell's claims, we do not address whether the Childerses would have been estopped to assert the Statute of Frauds as a defense, nor do we address whether the trial court, under Rule 15, Ala. R. Civ. P., properly deemed the Childerses' answer amended to conform to the evidence presented at trial.