MURDOCK, Judge.
Gulf Coast Motors sued Glenn A. Page, Jr. (“Glenn”), and his wife, Mary R. Page (“Mary”), to recover money lent at various times to Glenn. Mary asserted the affirmative defenses of the lack of consideration and the Statute of Frauds.
On August 29, 2003, the case was tried by the court without a jury. The trial court heard ore tenus testimony from Mary, Glenn, and representatives of Gulf Coast Motors. After the trial, the parties submitted briefs on the application of the Statute of Frauds as to the claims asserted against Mary. On November 7, 2003, the trial court entered a judgment in the amount of $23,020 in favor of Gulf Coast Motors and against both Glenn and Mary. On December 8, 2003, Mary filed a motion to alter, amend, or vacate the judgment based on the Statute of Frauds. That motion was denied on December 9, 2003. On January 20, 2004, Mary filed a notice of appeal to this court. Glenn did not appeal.
Glenn had a long-term friendship with Jerry Sellers, one of the owners of Gulf Coast Motors. In or around 1993, Glenn began borrowing money from Gulf Coast Motors on a recurring basis. The parties agree that Glenn borrowed money from Gulf Coast Motors and that he “had a gambling problem,” but there is no evidence as to what Glenn used the loan proceeds for.[1] In its brief to this court, Gulf Coast Motors fails to cite to any evidence indicating that Mary derived an economic benefit from the proceeds of any of the loans to Glenn.
The loan process was informal. Gulf Coast Motors set up a one-page ledger to record Glenn’s loans. The ledger sheet showed the debits and credits, and it contained the following statement at the bottom, signed by Glenn: “I agree to pay Jerry Sellers[2] as above with waiver of all exemptions.” Mary did not sign the ledger sheet, and her name does not appear thereon.
At various times between October 2000 and October 2002, Glenn borrowed money from Gulf Coast Motors. According to Gulf Coast Motors’s bookkeeper, Glenn “would come in and borrow money from [Gulf Coast Motors] and set up a payment plan, get cash, then sometimes he’d come in and he would want [Sellers] to cash a check for him and, hold the check.” At various times, Glenn made payments, typically in amounts of $300 or $600, to apply toward the balance of his account. The parties do not dispute that Glenn was indebted to Gulf Coast Motors.
*150 Sellers testified that he became concerned about Glenn’s debt in 2002 and that he asked Mary to guaranty Glenn’s debt. According to Sellers, Mary agreed to make sure that Gulf Coast Motors was paid if they would “work with us.” Sellers testified as follows:
“I called [Mary] on the telephone. Mary, Glenn is up here wanting me to cash another check and, you know, he’s got a big bill already run up here and he tells me when y’all harvest your timber ... you’re going to pay off all this account.
[[Image here]]
“And, ah, [Mary] said, well, I’m gonna pay it. I promise you that we’ll pay this off. Just work with us until we can sell our timber. I promise you you won’t lose a dime. You’ll be paid just as soon as we get the money.”
Sellers testified that he modified Glenn’s payment terms and made additional advances based on Mary’s assurances that she would make payment. Sellers testified:
“She said, Well, if you will redo those just put them in a payment where we can pay five of six hundred dollars a month we’ll do that until we sell our timber. And based on her promise that she would make sure it was paid, I did that for her because Glenn does not have anything in his name.
[[Image here]]
“And the only assurance I could go forward on was Miss Mary. And she promised me faithfully that I would be paid in full everything was owed and all she wanted me to do was work with them until they could sell their timber.”
Mary denied that she had promised to pay any of Glenn’s debt, and she denied that Sellers had asked her to pay Glenn’s debt. Mary testified that she never received any money from Sellers or Gulf Coast Motors, and she denied that she had received any economic benefit from moneys lent by Gulf Coast Motors to Glenn. She testified that, if she had been asked, she would have advised Sellers not to lend money to Glenn.
Because the trial court heard ore tenus evidence, the trial court’s findings of fact are given a presumption of correctness, and we will not reverse the trial court’s judgment based on those findings of fact “unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.” Odom v. Hull, 658 So.2d 442, 444 (Ala.1995). Where, however, the issue is the application of law to the facts, the presumption of correctness has no application and our review is de novo. Brown v. City of Huntsville, 891 So.2d 295 (Ala.2004); Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415 (Ala.1994).
Our disposition of this case turns on the proper application of the Statute of Frauds. Specifically, § 8-9-2, Ala.Code 1975, provides, in pertinent part:
“In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
[[Image here]]
“(3) Every special promise to answer for the debt, default or miscarriage of another;
[[Image here]]
“(7) Every agreement or commitment to lend money, delay or forebear repayment thereof or to modify the provisions of such an agreement or commitment *151 except for consumer loans with a principal amount financed less than $25,000.”
A promise to pay the debt of another is barred by the Statute of Frauds unless it is in writing. It is not disputed that Mary did not sign a note, guaranty, or any other writing promising to pay any part of Glenn’s debts. Therefore, if the purported agreement to pay Glenn’s debt is within the Statute of Frauds, Mary is not liable even if the. trial court found Sellers’s testimony to be credible. Mary’s alleged oral promises are not enforceable under the Statute of Frauds.
Gulf Coast Motors makes three arguments in this appeal. First, it argues that Mary’s obligations were original promises to pay, rather than guaranty or collateral agreements, and thus were not within the Statute of Frauds. The Alabama Supreme Court has defined “original” and “collateral” agreements as follows:
“ ‘Collateral’ agreements are those in which the object of the promise is to become the guarantor of another’s debt; these are within the statute and must be in writing to be enforceable. ‘Original’ agreements are those in which the effect of the promise is to pay the debt of another, but the object of the promise is to promote some purpose of the promi-sor.”
Fendley v. Dozier Hardware Co., 449 So.2d 1236, 1238 (Ala.1984) (citations omitted). See also Lawler v. Cook Oil Co., 640 So.2d 950, 951 (Ala.Civ.App.1994).
In this case, Mary’s alleged agreement was to guaranty payment of Glenn’s debt.[3] Much of the credit had already been extended to Glenn when Mary allegedly made her oral promises to guaranty payment. Moreover, there is no suggestion in the record as to any economic purpose that Mary would advance by repayment of Glenn’s debt, and there is no evidence indicating that Mary received any economic benefit from the loans to Glenn. See Lankford v. Rucker, 396 So.2d 105 (Ala.Civ.App.1981). We conclude that the issue presented involves an alle'ged guaranty, or “collateral,” agreement, not an “original” agreement.
Second, Gulf Coast Motors argues that Ala.Code 1975, § 8—9—2(7), exempts from its application agreements or commitments to lend money in cases of “consumer loans with a principal amount financed less than $25,000.” § 8-9-2(7). This argument fails because § 8-9-2(7) applies to “commitments to lend money, not to repay money that has been borrowed;” Carter v. Holland, 825 So.2d 832, 836 (Ala.Civ.App.2001). See Rozell v. Childers, 888 So.2d 1244 (Ala.Civ.App.2004). Mary’s purported guaranty is not an agreement to lend money, and it is therefore not governed by § 8-9-2(7). Moreover, a transaction is covered by the Statute of Frauds if it comes within any of the subsections of § 8-9-2. Because Mary’s purported guaranty was covered by § 8—9—2(3), it is irrelevant that it is excluded from the scope of another subsection of the statute.
Third, Gulf Coast Motors argues, in reliance upon Nelson Realty Co. v. Darling Shop of Birmingham, Inc., 267 Ala. 301, 101 So.2d 78 (1957), that Mary committed fraud in the procurement of the loans and that the Statute of Frauds therefore does not. bar recovery. This argument is without. merit because the Alabama Supreme Court recently held that “an oral promise that is void by operation of the Statute of Frauds will not support an action against the promisor for promissory fraud.” Bruce v. Cole, 854 So.2d 47, *152 58 (Ala.2003). To allow a promissory-fraud claim in such circumstances would cause the Statute of Frauds to become meaningless. Therefore, under Bruce, the promissory-fraud claim is barred because the underlying promise is barred by the Statute of Frauds.
Based on the foregoing, we conclude that Mary’s alleged promises to guaranty or repay Glenn’s debts were within the Statute of Frauds and, therefore, were not enforceable. Therefore, we reverse the trial court’s judgment, and we remand the cause for the. trial court to enter a judgment in Mary’s favor on all claims.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY and THOMPSON, JJ., concur.
PITTMAN, J., recuses himself.

. When the loans were being made, Glenn was not working and had no assets in his own name. Mary has significant assets in her own name.

. The parties do not discuss the discrepancy between the promise to pay Sellers and Gulf Coast Motors’s claim to be the obligee. We note that Gulf Coast Motors is referred to in the record both as a corporation and as “Jerry Sellers d/b/a Gulf Coast Motors.”

. Sellers testified that he "refinanced [Glenn] per [Mary’s] request and put all the old other checks in with the other account and redid it at $600 a month.”